Futrell *v.* Oldham.

## Opinion delivered March 24, 1913.

1. Governor—vacancy—filled how.—The office of Governor is never to be filled at all except by direct vote of the people, and in the case of a vacancy in the office of Governor, the Constitution (section 12, article 6) provides only for a temporary devolution of the duties and emoluments of the office upon some other functionary, while the vacancy exists. (Page 390.)

2. Governor—vacancy—persons entitled to act as governor.—Under section 12, article 6, of the Constitution which provides: "In the case of the * * * resignation * * * of the Governor, the powers, duties and emoluments of the office for the remainder of the term * * * shall devolve upon, and accrue to the President of the Senate," the duties of the office of Governor, during a vacancy in that office, devolves upon the incumbent of the office of President of the Senate, and a change in the incumbency of that office works a change in the performance of the duties of the office of Governor. When another President of the Senate is elected during a vacancy in the office of Governor, the duties of the latter office devolve upon him from the time of his election and qualification as President of the Senate. (Page 390.)

3. Legislature—president of senate—duty to act as governor.—Under article 5, section 17, of the Constitution, which provides for the election of a President of the Senate from among the members whose terms of office continue over, who shall remain president until his successor shall be elected and qualified, and who, in the case of vacancy, shall perform the duties and exercise the powers of Governor; *held*, when such President of the Senate is elected, he becomes President of the Senate for all purposes, and the incumbency of his predecessor ends at that time. (Page 400.)

Appeal from Pulaski Circuit Court, Second Division. *Guy Fulk*, Judge; reversed.

*Elmer J. Lundy, W. C. Rodgers, Miles & Wade* and *Moore, Smith & Moore,* for appellant.

The Constitution devolves the duties, powers and emoluments of the office of Governor upon the President of the Senate, and not the office itself. The office in case of vacancy devolves not upon the person of the President of the Senate, but upon that office, and therefore upon whatever individual holds it rightfully for the time being. When appellee's term as President of the Senate, ended and appellant was elected to that office and qualified, he

became entitled to exercise the powers and perform the duties of Governor until an election was held and the vacancy filled. Constitution, art. 6, § 12, art. 5, § 17; art. 6, § 14; *Ib.* 13; 32 Atl. 155; 81 Pac. 871; 75 N. W. 211; 47 Pac. 450; 45 *Id.* 1050.

*Charles A. Walls, Frank Pace* and *Rose, Hemingway, Cantrell & Loughborough,* for appellee.

The words, ''President of the Senate,'' are used as descriptive of the person designated to exercise the powers, etc., of the office of Governor for the remainder of the term or until an election is held. Constitution, art. 6, § 12. The words used are *descripti personale.* 9 Wheat. 188; 7 Me. 489; 11 Ore. 389; 45 Pac. 243; 42 Atl. 155.

As to when an office is vacant see 13 So. 705; 32 Fla. 138; 49 So. 1032; 162 Ala. 117; 121 S. W. 64; 71 Atl. 122; 77 N. J. L. 68. ''Vacancy,'' as used, simply means that while there is an incumbent lawfully discharging the duties of the office, the tenure of that incumbent is not until the next regular election, but is subject to be terminated by the special election which he is required to call. *Supra.*

McCULLOCH, C. J. The present litigation involves a construction of the following provisions of the Constitution of this State.

''Each house, at the beginning of every regular session of the General Assembly, and whenever a vacancy may occur, shall elect from its members a presiding officer to be styled, respectively, the President of the Senate, and the Speaker of the House of Representatives; and, whenever, at the close of any session, it may appear that the term of the member elected President of the Senate will expire before the next regular session, the Senate shall elect another president from those members whose terms of office continue over, and who shall qualify and remain President of the Senate until his successor may be elected and qualified; and who, in the case of a vacancy in the office of Governor, shall perform the duties

and exercise the powers of Governor, as elsewhere herein provided." Section 17, article 5.

"In the case of the death, conviction on impeachment, failure to qualify, resignation, absence from the State or other disability of the Governor, the powers, duties and emoluments of the office for the remainder of the term, or until the disability be removed, or a Governor elected and qualified, shall devolve upon and accrue to the President of the Senate." Section 12, article 6.

The first of the above-quoted sections is found in the article devoted to the legislative department of the State Government and the other to the executive department.

Other related sections read as follows:

"If, during the vacancy of the office of Governor, the President of the Senate shall be impeached, removed from office, refuse to qualify, resign, die or be absent from the State, the Speaker of the House of Representative shall in like manner administer the government." Section 13, article 6.

"Whenever the office of Governor shall have become vacant by death, resignation, removal from office or otherwise, *provided,* such vacancy shall not happen within twelve months next before the expiration of the term of office for which the late Governor shall have been elected, the President of the Senate or Speaker of the House of Representatives, as the case may be, exercising the powers of Governor for the time being, shall immediately cause an election to be held to fill such vacancy giving by proclamation sixty days' previous notice thereof * * *." Section 14, article 6.

Senators are elected for terms of four years, but they are divided into two classes so that the terms of approximately half of the Senators expire every two years. The Legislature convenes in regular session biennially on the second Monday in January. The defendant, W. K. Oldham, was elected to the Senate at the general election held in September, 1910, and at the beginning of the legislative session of 1913 he was elected President of the Senate, took the oath of office and served as such. On

March 8, 1913, the Governor, Hon. Joe T. Robinson, resigned, and Mr. Oldham at once began to discharge the duties of the office of Governor. That session of the Legislature ended, by operation of law, on Thursday, March 13, 1913, and at that time the Senate, before adjournment, elected as president the plaintiff, J. M. Futrell, a Senator whose term of office continues over beyond the next regular session in 1915. Mr. Futrell took the oath of office as President of the Senate at the end of the session, and there at once arose a controversy between these two parties as to which of them is the one upon whom devolves the duties and emoluments of the office of Governor. Mr. Oldham declined to relinquish possession of the executive chamber, or to cease performance of the duties of the office of Governor, and this action was instituted against him by Mr. Futrell in the circuit court of Pulaski County to test the question of the rights and duties of the two parties with respect to the office of Governor. The action is based on a statute which provides that ''whenever a person usurps an office or franchise to which he is not entitled by law, an action by proceedings at law may be instituted against him, either by the State or the party entitled to the office or franchise, to prevent the usurper from exercising the office or franchise.'' Kirby's Digest, section 7983.

The circuit court sustained a demurrer to the complaint. Plaintiff elected to stand upon his complaint without amending, and final judgment was rendered against him, and he appealed to this court.

The case turns on the question, whether, on the resignation of the Governor, the then incumbent of the office of President of the Senate succeeded to the vacated office, or whether merely as such President of the Senate the powers, duties and emoluments of the office of Governor devolved upon him while he remained president.

It is contended on behalf of the defendant that the words, ''President of the Senate,'' in section 12, article 6, of the Constitution, are used as descriptive of the person designated to exercise the powers, perform the duties,

and receive the emoluments of the office of Governor for the remainder of the term or until a Governor be elected, and that the office itself devolves on that person for and during the period named. The argument is, that as other language of the same section relating to vacancy in the office of Governor by reason of "death, conviction on impeachment, failure to qualify, resignation, absence from the State or other disability," was obviously used as descriptive of the person, it naturally follows that the words, "President of the Senate," were also used in that sense. The latter words were, however, used for the purpose of prescribing a course of devolution of the powers, duties and emoluments of the office of Governor in the emergency named, and were, therefore, intended in a different sense from the language used in the first part of the section. The obvious purpose for which the terms were employed indicates the different meanings intended. The language of the Constitution seems plain. It specifies that in the contingency named, "the powers, duties and emoluments of the office * * * shall devolve upon and accrue to the President of the Senate." The other quoted section provides that the President of the Senate, "in the case of a vacancy in the office of Governor, shall perform the duties and exercise the powers of Governor." Not that the President of the Senate shall succeed to the office of Governor; nor that the office itself shall devolve upon him, but merely that he shall exercise the powers and perform the duties of the office during the period of the vacancy; and that the emoluments of the office shall accrue to him during that time. That is to say, he acts as Governor and receives the emoluments of that office merely by virtue of his office as President of the Senate, and does not actually become Governor. The vacancy in the office continues until a Governor is elected by the people, either at a special election called for that purpose or at the next regular election, in the event that the vacancy occurs more than twelve months before the expiration of the term. That could not be so if the office was actually filled by the per-

son who was then President of the Senate, for in that event there would be no vacancy, and other words would have been employed by the framers of the Constitution to convey the intended meaning. Language found in the other related sections of the Constitution fully confirms this view. Section 13, article 6, quoted above, provides for the devolution of the duties of Governor upon the Speaker of the House of Representatives. It speaks of a vacancy in the office of the Governor whilst the President of the Senate is performing the duties thereof, thus making it manifest that the vacancy is deemed to continue notwithstanding the accession of the President of the Senate. Again, it refers to the President of the Senate *eo nomine* after the vacancy has occurred, and he had entered upon the discharge of the duties of Governor, thus showing that he is still President of the Senate. If he has succeeded to the office and become Governor *de jure*, why refer to him as President of the Senate? Now, it is certain that there can not be two Presidents of the Senate at the same time, for the term of one incumbent of that office ends when that of his successor begins. Of course, we are not speaking of a mere temporary absence of the president while the Senate is in session, during which time some other Senator may be selected to preside temporarily. So, if the person discharging for the time being the duties of Governor is still President of the Senate, he can not be Governor. He may exercise the powers of the latter office—"exercise the office of Governor," as it is otherwise expressed in another section, but he does not fill the two offices. If, as contended, the President of the Senate fills two offices—that of President of the Senate and of Governor—in the emergency named, then his removal by impeachment, or otherwise, from the first named office, would have separated him from the other office, that of Governor, so as to give way to the Speaker of the House of Representatives. That section clearly contemplates that he is to remain President of the Senate while he is discharging the duties of the office of Governor, and his removal from the office of President

of the Senate displaces him from the exercise of the powers and duties of Governor, and provides, in that event, for the devolution of those duties upon the speaker. If the meaning contended for had been intended by the framers of the Constitution, the language of that section would have been different. They would have specified the removal, by impeachment, or otherwise, of the incumbent of the office of Governor, as the occasion for the succession of the speaker. Instead of doing that, they employed a term which clearly carries the meaning that, if the President of the Senate, who is then, by virtue of his incumbency of that office, exercising the powers of Governor, shall be removed by impeachment, or otherwise, then the speaker shall, "in like manner, administer the government."

If the contention be that the President of the Senate, when the Governor resigns, succeeds to that office, and thereby vacates his former office of president, the language used in that section would be equally inappropriate, for it refers to him as the President of the Senate, and that would be a misdescription if he had ceased to hold that office by reason of having become Governor.

It is true that the word "vacancy" is sometime used with reference to an office temporarily filled when it is evident from the context that such meaning was intended. *State* v. *Murphy,* 32 Fla. 138. But, even as applied to official position, the ordinary and popular meaning of the word is an office that is unoccupied, one without an incumbent "who has a lawful right to continue therein until the happening of some future event." *Ham* v. *State,* 162 Ala. 117; *Sanders* v. *Blakemore,* 104 Mo. 340.

The language of section 14, article 6, further confirms this construction. It speaks of the Governor's office being still vacant after the President of the Senate, or Speaker of the House, enters upon the discharge of the duties thereof, and commands that an election be called to fill the vacancy if it occurs more than a year before the expiration of the term. It refers to the one then performing such duties, not as Governor, but as "Pres-

ident of the Senate or Speaker of the House of Representatives, as the case may be, exercising the powers of Governor for the time being.'' If the framers of the Constitution had intended to provide for the devolution of the office of Governor, in case of vacancy by resignation, or otherwise, upon the President of the Senate, that intention could easily have been directly expressed in appropriate words. But they chose other terms which clearly observe the distinction between the course of succession of the office itself and the mere devolution of the duties and emoluments of the office for the time being, and deliberately adopted the latter as the best means of having the government administered until the people themselves can elect a Governor.

It follows, from the construction of the language of the section referred to, that the words, ''President of the Senate,'' in section 12, article 6, were not used as descriptive of the person, but of the officer who, in case of a vacancy in the office of Governor, shall exercise the powers and perform the duties of the latter office, until the vacancy can be filled by the people at an election.

Learned counsel for defendant stress the words, ''for the remainder of the term,'' used in this section of the Constitution, as indicative of an intention to cast the office itself upon the person who happened to be President of the Senate at the time the vacancy occurs. These particular words were, we think, used merely to specify the period during which the duties of the office shall be discharged and the emoluments enjoyed, in case the vacancy occurs within twelve months before the expiration of the term. They have no other significance, and can not serve to force or induce the construction of the preceding words to be merely descriptive of the person designated to succeed to the office of Governor.

It is argued that the conclusion we reach lessens the stability of the high office of Governor by permitting frequent changes, that it makes the office follow the vicissitudes of the incumbency of the President of the Senate,

and for that reason this construction should not be adopted.

Alarm on that score, is, we think, unfounded. The central thought of the sections hereinbefore quoted is, that the office of Governor is never to be filled at all except by the direct vote of the people themselves, and provision is made by the Constitution for only a temporary devolution of the duties and emoluments of the office upon some other functionary while a vacancy exists. Frequent changes are not contemplated. On the contrary, the President of the Senate, elected at the beginning, is expected to serve only during the limited time of the session, and the Constitution contains a peremptory command to the Senate, at the end of the session, if the term of the President as Senator shall expire before the next regular session, to elect, from those members whose terms of office continue over, a president, to serve during the longer period until the next regular session. Thus there appears a provision against frequent changes, for one is put in office whose term does not expire until after the expiration of the Governor's term. Nor is it worth while to take fright at the possibility, under the construction we place on those sections of the Constitution, of there occurring an interregnum during the period between the general election in September and the convening of the Legislature in January when, by reason of the death or resignation of the Governor, and of the President of the Senate, and the expiration of the Speaker's term of office, there might be no one to exercise the powers of Governor. Such a situation might, it is true, arise. So, it might, if the construction urged by defendant should be adopted, for, if the President of the Senate succeed to the office of Governor, his death or resignation might occur when there was no one specified to exercise the functions of the office. Absolute immunity from all danger and inconvenience is unattainable in human affairs. Those provisions are expressed in plain language, doubtless well understood by the framers of the Constitution, and they anticipated and protected against every

emergency that they considered not too remote to make it expedient to safeguard. Such a contingency is, indeed, remote. Whether, when it arises, if it ever does, some rational doctrine of necessity may not be found to solve the problem and establish the superior right of some one to discharge the duties of Governor, we need not now attempt to decide. Sufficient unto the day is the evil thereof. Happily, our form of government has thus far proved adequate. The Constitution provides, as we have already noticed, that at the end of the session of the Legislature the Senate shall elect a president from among the members whose terms continue over. If, after the adjournment of the Legislature, a vacancy in the office of Governor should occur, within twelve months before the expiration of the term, and if a vacancy should also occur in the presidency of the Senate, the powers of the office of Governor would devolve on the speaker, and it would then be within his power, and it would be his duty, to call an extraordinary session of the Legislature so that the Senate could fill the vacancy in the office of president. Thus, a method is provided for every reasonably anticipated contingency with respect to the administration of government.

Thus far we have stated our conclusion based on what we conceive to be the plain language of the Constitution without attempting to fortify our view with citation of precedent, but ample support is found in the decisions of other courts construing similar constitutional provisions.

In the State of New Jersey, the Constitution, so far as it relates to the question now under consideration, is identical with our Constitution. The Governor resigned, and the President of the Senate began to exercise the powers of Governor, but thereafter resigned his office of Senator. The Speaker of the House of Representatives then asserted his right to discharge the duties of Governor, basing his claim on the fact that the resignation as Senator vacated the office of President of the Senate, and that the duties of the office of Governor devolved on him

in that emergency. He attempted to exercise the powers of Governor, and the validity of one of his acts in that regard was challenged. The Supreme Court of that State, in disposing of the question said:

"The provision is, that, in case of the resignation of the Governor, the powers, duties and emoluments of the office shall devolve upon the President of the Senate, and not that the President of the Senate shall thereby become Governor, and hold the title to the office until another Governor is elected. If the framers of the fundamental law had intended to transfer the President of the Senate to the executive chair, and thereby to vacate his office of Senator, it is reasonable to believe that they would have said so in no uncertain language. The language used is not ambiguous. It declares that the powers, duties, and emoluments of the office shall devolve on the President of the Senate; it does not confer upon him the title of the office. The President of the Senate exercises the powers of the Governor; the President of the Senate performs the duties of the Governor; the President of the Senate receives the emoluments of that office. He is still President of the Senate, with the added duties required of the chief executive of the State imposed upon him. There is no language in the Constitution from which it can reasonably be inferred that his office of President of the Senate was to be vacated. He retains his office of Senator; and as President of the Senate, and not as Governor, he exercises the added powers and performs the superimposed duties." *State ex rel.* v. *Heller,* 63 N. J. L. 105; 57 L. R. A. 312; 42 Atl. 155.

Many other statements of the opinion reasoning out the conclusions reached are equally appropriate in considering the question now presented to us.

The force of that opinion is sought to be broken by the contention that upon this point it was mere *dictum.* We do not, however, find that to be a correct estimate of the opinion. The court first took up the question of the validity of the act of a *de facto* officer and attempted to dispose of the case on that point, but found that there

was nothing in the record to indicate that the speaker was *de facto* Governor, and, therefore, found it necessary to determine the question whether he was *de jure*, clothed with the powers of the office of Governor. Thus the discussion of this question became highly pertinent, and can in no wise be considered *dictum*.

In Colorado the provisions of the Constitution are substantially the same, except that the office of Lieutenant Governor is provided for, and also the office of president *pro tempore* of the Senate, the former succeeding to the powers, duties and emoluments of the office of Governor for the remiander of the term when a vacancy occurs, and the latter succeeding to the powers of the office of Lieutenant Governor in case of a vacancy. The Governor resigned, and the Lieutenant Governor assumed the discharge of the duties of Governor. The President *pro tempore* of the Senate qualified as Lieutenant Governor, but at the close of the regular session, another president *pro tempore* was elected to succeed him, and the question arose, as in this case, which of these Senators, elected as president *pro tempore*, should thereafter discharge the duties of the office of Lieutenant Governor. The Constitution in that State provided that "the Senate shall, at the beginning and close of each regular session, and at such other times as may be necessary, elect one of its members president *pro tempore*." The court, in disposing of the point, said:

"These sections, read together, provide that the Senate shall, at the beginning and close of each regular session, and at such other times as may be necessary, elect one of its members president *pro tem.*, and that in case of the absence, impeachment, or disqualification from any cause of the Lieutenant Governor, or when the powers, duties, and emoluments of the office of Governor devolve upon the Lieutenant Governor through the death, * * * resignation, absence from the State, or disability of the Governor, the president *pro tem.* shall perform the duties of Lieutenant Governor until the cause preventing the Lieutenant Governor from discharging his official duties

is removed. * *. * If the framers of our Constitution had intended that the president *pro tem.* of the Senate should become Lieutenant Governor *de jure* in the contingency under consideration, they could easily have said so. They have not so provided. They have simply said that if, for some permanent cause, the Lieutenant Governor fails to discharge his official duties, they shall be performed while such condition obtains by the President of the Senate as, such. * * * We conclude that respondent did not become Lieutenant Governor *de jure* by the duties of Governor devolving upon Lieutenant Governor McDonald through the resignation of Governor Peabody, and that by the election of relator as president *pro tem.*, respondent, being no longer president *pro tem.*, lost his right to perform the duties of Lieutenant Governor, and relator by such election became entitled to perform the duties of such office.'' *People* v. *Cornforth,* 34 Col. 107, 81 Pac. 871.

In *State* v. *Sadler,* 23 Nev. 356, 47 Pac. 450, the Supreme Court of Nevada, construing similar provisions of the Constitution of that State, said:

''The gubernatorial succession is covered by the foregoing provisions. If a vacancy occurs in the office of Governor, the powers and duties of the office devolve upon the Lieutenant Governor, but there is no vacancy created thereby in the office of Lieutenant Governor. The officer remains Lieutenant Governor, but invested with the powers and duties of Governor.''

The Supreme Court of California, construing a similar provision of the Constitution, said:

''It will be seen that in case of a vacancy in the office of Governor, the vacancy is not to be filled, but the powers and duties devolve upon the Lieutenant Governor, who does not cease to be Lieutenant Governor. Under such circumstances, it would hardly be contended that when the powers and duties of the Governor devolve upon the Lieutenant Governor, the latter thereby becomes Governor, and can appoint a Lieutenant Governor. Nor do I think it could be contended that when the presi-

dent *pro tempore* of the Senate acts as Governor, he could appoint a person to fill the vacancy in the office of Lieutenant Governor. If he could, he would then appoint himself out of office, and it would be his duty to do so." *People* v. *Budd,* 114 Cal. 168, 45 Pac. 1060.

The Supreme Court of Minnesota, in *State ex rel. Marr* v. *Stearns,* 72 Minn. 200, 75 N. W. 210, decided that "the president *pro tempore* of the State Senate does not cease to be a Senator when he becomes Lieutenant Governor by reason of a vacancy in the office of Governor, and a corresponding vacancy in the office of Lieutenant Governor."

The case of *Chadwick* v. *Earhart,* 11 Ore. 389, 4 Pac. 1180, is pressed on our attention as holding directly to the contrary. We do not, however, consider that case an authority on this question. The language of the Constitution is different from ours, and the opinion was based upon the language, which the court construed to amount to a devolution of the office itself upon another. The language of the Oregon Constitution is similar to that found in the Constitution of the United States, which provides that, "in the case of the removal of the President from office, or of his death, resignation, or inability to discharge the powers and duties of such office, the same shall devolve on the Vice President." The words of devolution were held in the Oregon case to relate to the word "office" and not to the discharge of the powers and duties thereof. No provision is made in the Constitution of the United States for the election of President in case of a vacancy. Giving the same construction to the language of that provision as given by the Oregon court, the Vice President is properly held to become President when a vacancy occurs, and the vacancy is thereby completely filled. That construction is positively negatived by the language of our Constitution, which clearly recognizes the continuance of the vacancy and provides other methods for filling it.

The result of our construction of the Constitution is that, the duties of the office of Governor, during a va-

cancy in that office, devolve upon the incumbent of the office of President of the Senate, and that a change in the incumbency of that office works a change in the performance of the duties of the office of Governor. When another President of the Senate is elected during a vacancy in the office of Governor, the duties of the latter office devolve upon him from the time of his election and qualifications as president.

The remaining question in this case relates to the time when the President of the Senate last elected shall take office.

It is suggested that he is elected at the end of the session, but does not take office until the expiration of the senatorial term of his predecessor. This is not the correct interpretation of the Constitution. The language of section 17, article 5, is that "whenever, at the close of any session, it may appear that the term of the member elected President of the Senate will expire before the next regular session, the Senate shall elect another president from those members whose terms of office continue over, who shall qualify and remain President of the Senate until his successor may be elected and qualified; and who, in the case of a vacancy in the office of Governor, shall perform the duties and exercise the powers of Governor."

If the framers of this section intended to postpone the date of qualification of the new president beyond the time of his election, they would have expressed that intention in better form. The words, "who shall qualify and remain president," necessarily mean that he shall qualify then. At the close of the session. He then becomes President of the Senate for all purposes, the discharge of all the duties of that office thereafter devolve upon him, and the incumbency of his predecessor ends at that time.

It follows, from what we have said and according to the allegations of the complaint, that Mr. Futrell is now the President of the Senate, and during the vacancy in the office of Governor the performance of the duties of

that office devolve upon him, and to him the emoluments of that office accrue. The circuit court erred in sustaining the demurrer to the complaint. The judgment is therefore reversed and the cause remanded with directions to overrule the demurrer.