### HODGES. v. KEEL.

### Opinion delivered July 14, 1913.

1. LEGISLATURE—SENATE—PRESIDENT TAKES OFFICE WHEN.—Under art. 5, § 18, of the Constitution, which provides that "at the close of any session" the Senate shall elect a president from the members whose terms extend over into the next regular session, the president so elected becomes president of the Senate at the fall of the gavel which marks the end of the session, and the end of the term of the old president. (Page 189.)

2. GOVERNOR—WHEN PRESIDENT OF THE SENATE BECOMES ACTING GOVERNOR.—O was president of the Senate and acting Governor and on March 13, 1913, at 10 A. M. approved a bill passed by the General Assembly. F was elected president of the Senate and

qualified on March 13 at 9:11 A. M., which was before the final adjournment of the Senate. Later F, as Acting Governor withdrew the bill from the Secretary of State and vetoed it. *Held,* F did not become president of the Senate and Acting Governor until the actual adjournment of the Senate for the session, and that the act became a law when it was approved by O, who was Acting Governor until the adjournment.   (Page 190.)

3.  MANDAMUS—WILL ISSUE WHEN.—Mandamus is the proper remedy whereby one specially interested in the enforcement of a statute, may compel the Secretary of State to publish an act of the General Assembly under his certificate.   (Page 191.)

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; affirmed.

*Wm. L. Moose,* Attorney General, and *John W.* and *Jos. M. Stayton,* for appellant.

When the Senate, in compliance with section 18, article 5, of the Constitution, elected Senator Futrell as President of the Senate at the close of the session, and he took the oath of office as such, the term of his predecessor immediately ended.   107 Ark. 386, 155 S. W. (Ark.) 504; *Id.* 507.

The words "at the close of the session" do not mean that the election must take place on the final day thereof. These words were not intended by the framers of the Constitution to be construed literally, for the close of the session does not come until immediately after the *sine die* adjournment.

The constitutional requirement that this election be held during the session is mandatory. *Id.* 505.

Senator Futrell was entitled to take the oath of office immediately after his election, and thereby terminate the incumbency of Senator Oldham, *supra,* p. 507. When he took the oath of office, therefore, at 9:11 A. M. on March 13, 1913, he became President of the Senate for all purposes, at that hour, and the subsequent oath taken by him before the Chief Justice was mere surplusage.

*Morris M.* and *Louis M. Cohn,* for appellees.

1.  Governor Futrell's veto of the act in question was ineffective and void, "the executive power over the

bill'' having been by Governor Oldham "exercised and exhausted before the attempted veto." 83 Ark. 448, 467.

2.   The opinion in *Futrell* v. *Oldham,* 155 S. W. 504, does not sustain appellant's contention, but it fairly warrants the conclusion that Mr. Futrell took the office to which he had been elected "at the close of the session" and not before.   Mr. Oldham was in law the President of the Senate and *ex-officio* Governor until the end of the session, and Mr. Futrell became president upon the adjournment of the session.

3.   That the petitioners were proper parties to institute proceeding is obvious.   45 Ark. 121; 26 Ark. 100; 30 Ark. 472; 24 Ark. 1; 42 Ark. 152; 83 Ark. 448; 91 U. S. 343, 354, 355; 41 L. R. A. 615; 19 Wash. 518; 53 Pac. 719; 126 Mich. 341; 85 N. W. 114; 115 Ia. 738, 87 N. W. 704.   And the Secretary of State was the only necessary defendant.   33 Ark. 450.

Mandamus is the proper remedy.   76 Va. 876; 65 W. Va. 587, 64 S. E. 845, 22 L. R. A. (N. S.), 1089; 79 Va. 269.

McCulloch, C. J.   The General Assembly of 1913 enacted a special statute creating a levee district in Jackson County, Arkansas, designated as Village Creek & White River Levee District.

The bill was presented to the Acting Governor, for his approval or disapproval, on March 12, 1913, the day before final adjournment, and on March 13, 1913, at 10:10 o'clock A. M., Mr. Oldham, who then occupied the Governor's office and assumed to discharge the duties of Acting Governor, approved and signed the bill, and filed it in the office of the Secretary of State.

That session of the General Assembly came to a close at noon on that day, and Mr. Futrell succeeded to the office of Acting Governor by election to the office of President of the Senate.

The controversy between these two gentlemen over the question of the succession to that office was decided by this court in the reecnt case of *Futrell* v. *Oldham,* 107 Ark. 386, 155 S. W. 502.   The details are set

forth in the opinion of the court in that case. The decision was rendered on March 24, 1913, and on that day Mr. Oldham relinquished the Governor's quarters in the State Capitol to Mr. Futrell and no longer assumed to act as Governor.

Thereafter, on March 31, 1913, which was within the twenty days allowed for approval or disapproval of bills by the Governor when the General Assembly by adjournment prevents the return of a bill within five days (Constitution, art. 6, § 15), Mr. Futrell withdrew this bill from the office of the Secretary of State and vetoed it. His proclamation announcing the veto recites that he had qualified as President of the Senate at 9:11 o'clock A. M. on March 13, 1913, and at that moment became Acting Governor, and that the power of his predecessor to act at that time ceased.

The Secretary of State has refused to cause the act to be published as required by statute, and appellees, who are property owners within the boundaries of the levee district, instituted this action in the Pulaski Circuit Court to compel the Secretary of State to perform his duties in that respect. The circuit court awarded the writ of peremptory mandamus as prayed, and the Secretary of State has appealed to this court.

The contention of appellees is that Mr. Oldham, at the time he signed the bill, was, not only *de facto* President of the Senate and Acting Governor, but that his term had not ended and that he was President of the Senate *de jure*.

On the other hand, it is contended by the Attorney General and the counsel associated with him in the case that Mr. Futrell became President of the Senate and Acting Governor before the bill was signed by Mr. Oldham and that the power of the latter to act as Governor had ceased.

We look to the journals of the two houses and the records in the office of the Secretary of State for the purpose of ascertaining the proceedings concerning the

enactment and approval of a statute. *Powell* v. *Hays,* 83 Ark. 448.

The regular session of the General Assembly came to an end, as before stated, on March 13, 1913, at noon.

On Monday, March 10, 1913, the Senate passed a resolution reciting the section of the Constitution that "whenever, at the close of any session, it may appear that the term of the member elected President of the Senate will expire before the next regular session, the Senate shall elect another president from those members whose terms of office continue over," and providing that the Senate "proceed to the election of a president from those members who continue over as provided by said Constitution of the State of Arkansas."

Pursuant to said resolution the Senate proceeded to the election, and Mr. Futrell was elected on that day.

The Governor of the State had resigned on March 8, and Mr. Oldham, as President of the Senate, was acting as Governor, and continued to act in that capacity until the close of the session, and he also assumed to act until the controversy was settled by the decision of this court.

Mr. Futrell appeared before one of the Associate Justices of the Supreme Court at chambers on March 13, 1913, at 9:11 o'clock A. M., and took and subscribed the oath of office as President of the Senate. A copy of the oath was filed in the office of the Secretary of State. He did not make known to the Senate or to Mr. Oldham the fact that he had taken the oath as President of the Senate, and did not undertake to discharge the duties of that office until he again took the oath of office before the Chief Justice of the Supreme Court, in the presence of the Senate, at 10:45 o'clock A. M., with the usual ceremonies. He explains in a statement of his which was adduced in evidence in this case that he was ready to take the chair as President of the Senate at any moment, but had business on the floor of the Senate, and for that reason did not do so.

It will be seen from the above recitals that Mr. Old-

ham approved and signed the bill between the time that Mr. Futrell took the oath of office before one of the Associate Justices and the time that he again took the oath administered by the Chief Justice in the presence of the Senate.

The determination of who was President of the Senate *de jure* at the time the bill was signed by Mr. Oldham turns, of course, upon the decision of the question when the term of office of the President of the Senate, elected at the beginning of the session, ends, and when the term of the holdover, elected at the close of the session, begins.

The Constitution provides that the Senate, ''at the beginning of every regular session of the General Assembly, and whenever a vacancy may occur, shall elect from its members a presiding officer * * *; and whenever, at the close of any session, it may appear that the term of the member elected President of the Senate will expire before the next regular session, the Senate shall elect another President from those members whose term of office continue over, who shall qualify and remain President of the Senate until his successor may be elected and qualified; and who, in the case of a vacancy in the office of Governor, shall perform the duties and exercise the powers of Governor.''

The President of the Senate is elected at the beginning of the session for a term. That term begins with his election and ends with the close of the session. He may be removed and a vacancy created by a vote of the Senate. The particular method and procedure in that respect need not now be determined.

Conceding that the president may be removed by resolution at any time during the session, and another elected in his stead, it is apparent from the record that it was not intended by the election of Mr. Futrell three days before the close of the session to remove Mr. Oldham from office at that time and to create a vacancy to be filled by the election of another. The resolution itself recites that the election was to be held in performance

of the constitutional function of electing a president to regularly succeed the incumbent.

The election was not held precisely at the close of the session, and that need not have been done. The language of the Constitution is that that shall be done "at the close of any session." Manifestly, the election must be held before the session actually closes, and it need not be the last act of the Senate. The purpose of this provision is that, in contemplation of the close of the session and before the session actually ends, the Senate shall elect a successor to the then incumbent of the office of president, and that he shall qualify as such. In other words, the fall of the gavel at the end of the session marks the end of the term of the old president and the beginning of the term of the new. That is the effect of our decision in *Futrell* v. *Oldham, supra.*

It is unimportant to inquire whether the oath of office taken by Mr. Futrell before one of the Associate Justices in his chambers, or the oath taken later, in the presence of the Senate, before the Chief Justice, was the one upon which he was inducted into office. Both oaths were taken in contemplation of assuming the duties of the office at the moment specified by the Constitution, and was effective for that purpose, but neither of the oaths ushered him into office until the time specified by the Constitution, which was the close of the session, and until that moment his predecessor, Mr. Oldham, was President of the Senate *de jure.*

Now, there is another reason which could well be brought forward why Mr. Oldham's act in approving and signing the bill was valid. He was Acting Governor *de facto* and in the discharge of the duties as such and no demand had been made upon him at that time for a surrender of the office, and Mr. Futrell had not at that time asserted his right to hold the office. Without attempting to go into any full discussion as to what period of time the validity of Mr. Oldham's acts as *de facto* Governor continued, it seems clear to us that, up to the time that Mr. Futrell demanded the office and

undertook to set up as Acting Governor a separate office
in the State Capitol, the acts of Mr. Oldham as *de facto*
Acting Governor should be held to be valid.   Under any
other view of the case interminable confusion might
arise.

Appellees adopted the proper remedy in this case.
The statutes of the State require the Secretary of State
to cause the acts of the General Assembly to be pub-
lished under his certificate by the public printer, and
those specially interested in the enforcement of this
statute have the right to insist upon its being published,
so as to be given proper public authenticity.   Appellees
are property owners to be benefited by the improvement
specified in the act and are, therefore, interested within
the meaning of the law and entitled to ask for man-
damus to compel the Secretary of State to discharge his
duty in this respect.   *Maddox* v. *Neal*, 45 Ark. 121.   As
to remedy by mandamus, see authorities cited in appel-
lee's brief.

The judgment of the circuit court awarding peremp-
tory mandamus was correct, and the same is therefore
affirmed.

SMITH, J., concurs.