STATE OF DELAWARE, Upon the relation of Clarence A. Southerland, Attorney-General, *vs.* ROYDEN CAULK.

(*May* 16, 1927.)

PENNEWILL, C. J., HARRINGTON and RICHARDS, J. J., sitting.

*Clarence A. Southerland*, Attorney-General, for the State of Delaware.

*John Biggs* and *John Biggs, Jr.*, for Respondent, Royden Caulk.

Superior Court for New Castle County, March Term, 1927. No. 145, January Term, 1927.

HARRINGTON, J., delivering the opinion of the Court:

The question to be determined is whether the respondent, Royden Caulk, was legally elected to the office of Levy Court Commissioner from the Seventh Levy Court District of New Castle County at the general election in November of 1926. The answer to this question depends upon whether there was any legislative or constitutional authority for such election, as an election held without authority of law is, undoubtedly, void. *McCreery on Elections*, § 147; 20 *C. J.* 96; 9 *R. C. L.* 989; *State v. Harrison*, 113 *Ind.* 434, 16 *N. E.* 384, 3 *Am. St. Rep.* 663; *Munroe v. Wells*, 83 *Md.* 505, 35

*A.* 142; *State v. Payton*, 139 *Iowa* 125, 117 *N. W.* 43; *People v. Crissey*, 91 *N. Y.* 616.

*Section* 1014, *Rev. Code* 1915, providing for the reorganization of the Levy Court of New Castle County, is as follows:

"At the general election to be held in November, A. D. 1912, the terms of the Levy Court Commissioners elected in Districts Numbers two, four, and six in New Castle County shall be for two years; quadrennially there after, commencing at the general election in November, A. D. 1914, the Levy Court Commissioners from said districts shall each be elected for a term of four years. At the general election to be held in November, A. D. 1912, and quadrennially thereafter the Levy Court Commissioners from Districts Numbers one, three, five and seven in New Castle County, shall each be elected for a term of four years. Said Levy Court Commissioners shall be elected from among the resident electors of each of said districts by the qualified voters thereof. Any person elected in Districts Numbers two, four and six at the general election held in November, A. D. 1912, shall be eligible for re-election at the general election to be held in November, A D. 1914. Except as herein provided, no person elected Levy Court Commissioner shall be eligible for election for two successive terms. The term of office of every Levy Court Commissioner elected as aforesaid shall commence on the first Tuesday in the month of January next following such election."

*Section* 1017 of the same chapter provides:

"In case of the death, resignation, ineligibility, or removal from the Levy Court District of any Commissioner, at any time, it shall be the duty of the Governor to appoint some suitable person having the qualifications hereinbefore required in that behalf to fill the vacancy so created, pursuant to the provisions of the constitution in that behalf "

*Section* 1014, above quoted, provides for quadrennial elections of Levy Court Commissioners in the even numbered districts of New Castle County, beginning with the year 1914, and in the odd numbered districts beginning with the year 1912. That it contains no provision for the election of a Levy Court Commissioner from the Seventh Levy Court District of that County at the general election, held in November, 1926, is, therefore, conceded.

The respondent, Caulk, contends, however, that the election of a Levy Court Commissioner from that district at that general election was impliedly authorized by the provisions of the Constitution of 1897.

*Section* 2 *of Article* 2 *of the Constitution* provides for the election of members of the General Assembly.

*Section* 6 of the same article provides for special elections to fill vacancies in either house of the General Assembly caused by

reason of failure to elect, ineligibility, death, resignation, or otherwise.

*Section* 2 *of Article* 3 provides that:

"The Governor shall be chosen by the qualified electors of the State, once in every four years, at the general election."

*Section* 19 *of Article* 3 provides, in part:

"A Lieutenant Governor shall be chosen at the same time, in the same manner, for the same term, and subject to the same provisions as the Governor. * * *"

*Section* 21 *of Article* 3 provides:

"The terms of office of the Attorney General and Insurance Commissioner shall be four years; and the terms of office of the State Treasurer and Auditor of Accounts shall be two years. These officers shall be chosen by the qualified electors of the State at general elections, and be commissioned by the Governor."

*Section* 22 *of Article* 3 provides:

"The terms of office of Prothonotaries, Clerks of the Peace, Registers of Wills, Recorders, Registers in Chancery, and Clerks of the Orphan's Court shall be four years; and the terms of office of Sheriffs and Coroners shall be two years. These officers shall be chosen by the qualified electors of the respective counties at general elections, and be commissioned by the Governor."

*Section* 1 *of Article* 5 provides:

"The general election shall be held biennially on the Tuesday next after the first Monday in the month of November, and shall be by ballot; but the General Assembly may by law prescribe the means, methods and instruments of voting so as best to secure secrecy and the independence of the voter, preserve the freedom and purity of elections and prevent fraud, corruption and intimidation thereat."

*Section* 8 of the schedule annexed to the Constitution provides:

"The terms of office of all State and County Officers made elective by this amended Constitution shall commence on the first Tuesday in January next after their election, unless otherwise provided in this amended Constitution or schedule."

With the possible exception of *Section* 9 of *Article* 3, which will be considered later, the provisions above referred to are the only constitutional provisions having any bearing, whatever, on the election of State or County officers.

It is true that the State concedes that if the office in dispute were one of the offices provided for by the constitution, that the election of the respondent, Royden Caulk, in November of 1926 would have been authorized by these provisions by necessary implication (*State v. Thoman*, 10 *Kan.* 191; 50 *L. R. A.* [*N. S.*] 367, note; *Wendorff v. Dill*, 83 *Kan.* 782, 112 *P.* 588, 50 *L. R. A.* [*N. S.*] 359; 12 *C. J.* 735); but said office is clearly a statutory office and that admission, therefore, has no bearing on the question before us.

From a careful analysis of *Sections* 2, 19, 21 and 22 *of Article* 3 and of *Section* 1 *of Article* 5, it is, however, obvious that they neither expressly nor impliedly authorized the election of Mr. Caulk.

But there are certain other constitutional provisions that apply to all State and County officers, whether constitutional or statutory. *State v. Churchman*, 3 *Penn.* 167, 361, 51 *A.* 49; *State v. Hart*, 3 *W. W. Harr.* (33 *Del.*)*15*, 129 *A.* 691.

*Section* 9 *of Article* 3 and *Section* 5 *of Article* 15 are comprised within that class.

*Section* 9 *of Article* 3 provides, in part, as follows:

"He (the Governor) shall have power, unless herein otherwise provided, to appoint, by and with the consent of a majority of all the members elected to the Senate, such officers as he is or may be authorized by this Constitution or by law to appoint. He shall have power to fill all vacancies that may happen during the recess of the Senate, in offices to which he may appoint, except in the offices of Chancellor, Chief Justice and Associate Judges, by granting commissions which shall expire at the end of the next session of the Senate.

"He shall have power to fill all vacancies that may happen in elective offices, except in the offices of Lieutenant-Governor and members of the General Assembly, by granting commissions which shall expire when their successors shall be duly qualified.

"In case of vacancy in an elective office, except as aforesaid, a person shall be chosen to said office for the full term at the next general election, unless the vacancy shall happen within two months next before such election, in which case the election for said office shall be held at the second succeeding general election."

*Section* 5 *of Article* 15 provides that:

"All public officers shall hold their respective offices until their successors shall be duly qualified, except in cases herein otherwise provided."

The respondent contends that *Section* 5 *of Article* 15 applies only to constitutional offices, but the language

used in that section is fully as broad and comprehensive as that of *Section 9 of Article 3*. That section, with certain exceptions provides for filling "all vacancies that may happen in elective offices," while *Section 5 in Article 15* in terms relates to "all public officers."

This Court has held that *Section 9 of Article 3* was not intended to apply to municipal officers (*State v. Churchman, 3 Penn.* 167, 49 A. 381; *Id., 3 Penn.* 361, 51 A. 49); but there is no other reported case that in any way limits the effect of the language used in that section, and no specific argument for limiting the scope of *Section 5* of *Article 15* to constitutional offices has been advanced in this case.

The respondent, in support of his contention without comment merely cites *State v. Herring*, 208 *Mo.* 708, 106 *S. W.* 984; *People v. Scheu*, 167 *N. Y.* 292, 60 *N. E.* 650; *People v. Osborne*, 7 *Colo.* 605, 4 *P.* 1074. None of these cases are in point. Some of them merely involve the meaning of several separate and distinct clauses in the same constitution when read together, while others are cases where certain statutory provisions were held not to be prohibited by any constitutional limitations.

There is a specific exception in *Section 5 of Article 15* of "cases herein otherwise provided," and pursuant to this provision *Section 6 of Article 2* provides for special elections to fill vacancies in either House of the General Assembly, caused, among other things, by failure to elect, but our attention has not been called to any other clause that would in any way limit or restrict the meaning of *Section 5 of Article 15*, so far as State or County officers are concerned.

The respondent's real contention, however, is that *Section 9 of Article 3* not only affirmatively authorized the election of James A. Hart to the office of Levy Court Commissioner from the Seventh District of New Castle County in November, 1922, but, also, authorized respondent's election to that office in November of 1926. He further contends that the same constitutional provision will authorize the election of his successor in November, 1930, though the statute does not provide for any election in that year.

In its final analysis, the contention of the respondent merely is that, as Hart was elected at the general election in November, 1922, for a term of four years from the month of January following his election, there was a vacancy at the end of his term which was lawfully filled at the general election of 1926.

The material question to consider, therefore, is whether there was a vacancy in the office in dispute at the expiration of Mr. Hart's term. In determining this question, *Section 5 of Article 15 of the Constitution* must, also, be read in connection with *Section 9 of Article 3*. The word "vacancy," as applied to a public office, ordinarily has no peculiar or technical meaning, and there is nothing to indicate that it was not used in its ordinary and usual sense in the Constitution of 1897.

In that sense, the word "vacancy" means that the office is unoccupied and without an incumbent, who has a legal right to continue therein until the happening of some future event. *State v. Harrison*, 113 *Ind.* 434, 16 *N. E.* 384, 3 *Am. St. Rep.* 663; *Futrell v. Oldham*, 107 *Ark.* 386, 155 *S. W.* 502, *Ann. Cas.* 1915A, 571; *Ham v. State*, 162 *Ala.* 117, 49 *So.* 1032; *State v. Blakemore*, 104 *Mo.* 340, 15 *S. W.* 960; 22 *R. C. L.* 437; 50 *L. R. A. (N. S.)* 369, note.

*Section 5 of Article 15* was apparently enacted for the very purpose of preventing a possible vacancy or interregnum in an office where there was not a properly qualified successor at the expiration of the usual statutory term of such office. *State v. Williams*, 222 *Mo.* 268, 121 *S. W.* 64, 17 *Ann. Cas.* 1006; *Chadduck v. Burke*, 103 *Va.* 694, 49 *S. E.* 976; *State v. Herring*, 208 *Mo.* 708, 106 *S. W.* 984; *Marshall v. Hardwood*, 5 *Md.* 423; *People v. Osborne*, 7 *Colo.* 605, 4 *P.* 1074; 22 *R. C. L.* 555; *In re Advisory Opinion to Governor*, 65 *Fla.* 434, 62 *So.* 363, 50 *L. R. A. (N. S.)* 365.

The exceptions to this rule covered by *Section 6 of Article 2 of the Constitution* have already been noticed.

It is true that the four year term for which Mr. Hart was elected would have expired in January of the present year if the law had provided for the election of his successor in November of

1926; but where there is an express constitutional provision that all public officers shall hold their respective offices until their successors shall be duly qualified, as in *Section 5 of Article* 15, the mere expiration of the usual statutory term does not create a vacancy if there is a person who has the lawful right to perform the duties of such office. *Mechem on Public Officers*, § 397; 50 *L. R. A.* (*N. S.*) 368, 372; *Commonwealth v. Hanley,* 9 *Pa.* 513; *State v. Lusk,* 18 *Mo.* 333; *Ash v. McVey*, 85 *Md.* 119, 36 *A.* 440; *Smoot v. Somerville*, 59 *Md.* 84; *Kimberlin v. State*, 130 *Ind.* 120, 29 *N. E.* 773, 14 *L. R. A.* 858, 30 *Am. St. Rep.* 208; *Ringling v. City of Hempstead* (*C. C. A.*), 193 *F.* 596; *People v. Lord*, 9 *Mich.* 227; *People v. Osborne*, 7 *Colo.* 605, 4 *P.* 1074.

It is not denied that James A. Hart was not only in the lawful possession of the office in question at the general election in November of 1926, but, also at the expiration of his four year term in January of the present year, when Royden Caulk, claiming the right to succeed him, took possession of such office. That being true, there was no vacancy in the office in dispute and Mr. Caulk's election was not authorized by *Section 9 of Article* 3. The authority for the election of a successor to James A. Hart must, therefore, be found in the Levy Court Statute (*Section* 1014, *Rev. Code* 1915) which provides for an election in November of 1912 and quadrennially thereafter. Pursuant to this provision his successor will be elected in November of 1928 and will succeed him on the first Tuesday in January following such election.

*State v. Hart*, 3 *W. W. Harr.* (33 *Del.*)*15*, 129 *A.* 691, does not control this case. The death of Sherburne A. Collins created a vacancy in the office of Levy Court Commissioner now in dispute and pursuant to *Section 9 of Article* 3 the Governor appointed Thomas Lattomus to fill such vacancy. At the general election in 1922, James A. Hart was elected to the same office and this Court held that the words "next general election" in *Section 9 of Article 3 of the Constitution* meant the next general election in point of time, and that his election for a full term was valid under that section though the Levy Court Statute did not provide for an election that year. No other questions were before the court.

From what we have already said, it is apparent that as there was neither statutory nor constitutional authority for the election of Royden Caulk in November of 1926, he is not entitled to hold the office of Levy Court Commissioner now occupied by him.

The motion of the respondent to dismiss the information and writ issued in this case is, therefore, refused.