195 P.2d 153

## STATE ex rel. DE CONCINI, Attorney General, v. GARVEY.

### No. 5123.

Supreme Court of Arizona.

June 21, 1948.

Evo De Concini, Atty. Gen., and Perry M. Ling, Chief Asst. Atty. Gen., for plaintiff.

Morgan & Locklear, Stahl & Murphy, and Charles C. Bernstein, all of Phoenix, for defendant.

LA PRADE, Justice.

This is an action in quo warranto brought by the attorney general in the name of the state, upon his relation, against the Honorable Dan E. Garvey, who is now and at all times since the first Monday of January, 1947, has been the duly elected, qualified, and acting secretary of state. The complaint alleges that the Honorable Sidney P. Osborn, the duly elected and acting governor of Arizona, died on the 28th day of May, 1948. The relator then alleges that, upon the death of Governor Osborn, the respondent, as secretary of state, purportedly under and by virtue of article 5, section 6 of the constitution of the state of Arizona, unlawfully assumed the office of governor of the state of Arizona and has since unlawfully held and exercised the same. The relator further alleges that under and by virtue of said section of the constitution Dan E. Garvey did not in law or in fact become governor of Arizona upon the death of Governor Osborn, but by virtue of the section the powers and duties of the office of governor merely devolved upon Mr. Garvey as said secretary of state.

Respondent by his answer denies that he unlawfully assumed the office of governor of the state of Arizona and unlawfully holds and exercises the rights and duties of that office. He contends the facts to be that upon the death of Governor Osborn he by virtue of the constitutional provision above referred to succeeded to the duties, powers, emoluments, and rights of the office of governor, and lawfully holds such office by virtue of the constitutional pro-

vision. He further maintains that he was required to and did assume the duties, powers, and privileges of the office of governor for the remainder of Governor Osborn's term, and that the *office* became vested in him so that he is governor de jure and de facto.

The public business and tranquility demand a prompt judicial inquiry and final determination of the actions of the respondent in admittedly holding and exercising the office of governor. It is for this reason that we have exercised our original jurisdiction in the premises, as we did in Sullivan v. Moore, 49 Ariz. 51, 64 P.2d 809 and State v. Sullivan, 66 Ariz. 348, 188 P.2d 592, and have promptly determined the issues. Two questions are presented for determination: first, upon the death of Governor Osborn did the respondent become vested with the *office* of governor for the remainder of the term? second, if he did not become vested with the office of governor, is he entitled to the emoluments of the office by virtue of the fact that he must perform the duties thereof?

The first question can be answered only by reference to the pertinent constitutional and statutory provisions. Article 5, section 6, of the Arizona constitution provides:

"[*Succession to governorship*].—In case of the impeachment of the governor, or his removal from office, death, inability to discharge the duties of his office, resignation, or absence from the state, *the powers and duties of the office shall devolve upon the secretary of state until the disability ceases, or during the remainder of the term.*" (Emphasis supplied.)

The following section of the code, relating to the duties of secretary of state and his assistant, we consider to be pertinent and highly illuminating and informative in our search for a correct determination on the questions involved:

"*Assistant secretary.*—The secretary shall appoint an assistant secretary of state, who, in the absence of the secretary of state, *or when the secretary of state is acting governor,* shall perform the duties of the secretary." (Emphasis supplied.) Section 4-204, A.C.A.1939.

The questions presented, though a matter of first impression in this state, are not novel. The question of the effect of the succession of an inferior officer to the duties and powers of the office of governor has been exhaustively treated by courts of last resort in many states. The prevailing view is that in such a case the inferior officer does not vacate his office and become governor de jure and de facto, but that the duties and powers of governor merely devolve on him and he retains his former office and becomes, practically speaking, ex officio governor. 24 Am.Jur., Governor, section 10. Under this view it is held that where the duties of the office of governor devolve on the president of the senate, he does not become governor, or cease to be a senator and president of the senate, and that on his resignation as

senator he ceases to be entitled to act as governor. Clifford v. Heller, 63 N.J.L. 105, 42 A. 155, 57 L.R.A. 312. For convenience following each citation will appear the constitutional provision of the state whose decision is referred to.

"In case of the death, resignation, or removal from office of the governor, the powers, duties, and emoluments of 'the office shall devolve upon the president of the senate." New Jersey, article 5, par. 12, N.J.S.A.

And where such duties devolve on the lieutenant governor, an election of a lieutenant governor to fill the supposed vacancy is unauthorized. State v. Sadler, 23 Nev. 356, 47 P. 450; State v. McBride, 29 Wash. 335, 70 P. 25.

"In case of the impeachment of the governor, or his removal from office, death, inability to discharge the duties of the said office, resignation or absence from the state, the powers and duties of the office shall devolve upon the lieutenant-governor for the residue of the term, or until the disability shall cease." Nevada, article 5, section 18.

"In case of the removal, resignation, death, or disability of the governor, the duties of the office shall devolve upon the lieutenant-governor." Washington, article 3, section 10.

Nor can the lieutenant governor in such an event appoint a successor to himself as lieutenant governor. People v. Budd, 114 Cal. 168, 45 P. 1060, 35 L.R.A. 46.

"In case of the impeachment of the Governor, or his removal from office, death, inability to discharge the powers and duties of his office, resignation, or absence from the State, the powers and duties of the office shall devolve upon the Lieutenant Governor for the residue of the term, or until the disability shall cease." California, article 5, section 16.

Likewise under this rule where a vacancy in the office of governor occurs, and the president pro tempore of the senate acts under a provision that he "shall be lieutenant governor" in such a case, he does not cease to be a senator, but retains his right to vote in that body. State v. Stearns, 72 Minn. 200, 75 N.W. 210.

"The lieutenant governor shall be ex officio president of the Senate; and in case a vacancy should occur, from any cause whatever, in the office of governor, he shall be governor during such vacancy." Minnesota, article 5, section 6, M.S.A.

And on the election of another as president pro tempore his right to act as lieutenant governor ceases. People v. Cornforth, 34 Colo. 107, 81 P. 871.

"In case of the death, impeachment, or conviction of felony or infamous misdemeanor, failure to qualify, resignation, absence from the state or other disability of the governor, the powers, duties and emoluments of the office, for the residue of the term, or until the disability be removed, shall devolve upon the lieutenant-governor." Colorado, article 4, section 13.

And it has been held that where the powers, duties, and emoluments devolve on the lieutenant governor for the residue of the term there was no vacancy in either the office of governor or lieutenant governor that could be filled at a general election which intervened before the expiration of the term. State v. Mitchell, 97 Mont. 252, 34 P.2d 369.

"In case of the failure to qualify, the impeachment or conviction of felony or infamous crime of the governor, or his death, removal from office, resignation, absence from the state, or inability to discharge the powers and duties of his office, the powers, duties and emoluments of the office, for the residue of the term, or until the disability shall cease, shall devolve upon the lieutenant-governor." Montana, section 14, article 7.

 A vacancy in the office of governor does not arise by the impeachment of the incumbent, his removal from office, or death in the sense that there is no one left with power to discharge the duties imposed upon the governor. State v. McBride, supra; State v. Mitchell, supra. In State ex rel. Martin v. Ekern, 1938, 228 Wis. 645, 280 N.W. 393, 399, it is said:

"When a vacancy, either permanent or temporary, occurs in the office of governor, the powers and duties of that office devolve upon the lieutenant governor for the residue of the term or until the governor, absent or impeached, shall have returned or the disability shall cease. It is clear that

the lieutenant governor does not become governor. He remains lieutenant governor, upon whom devolves the powers and duties of governor. In such a contingency no vacancy occurs in the office of lieutenant governor. * * *."

To the same effect see Futrell v. Oldham, 107 Ark. 386, 155 S.W. 502, Ann.Cas. 1915A, 571. The Arkansas constitutional provision reads as follows:

"In case of the death conviction or impeachment, failure to qualify, resignation, absence from the State or other disability of the Governor, the powers, duties and emoluments of the office for the remainder of the term, or until the disability be removed, or a Governor elected and qualified, shall devolve upon and accrue to the President of the Senate." Section 12, article 6.

The same situation exists where the governor is absent from the state or physically unable to discharge the duties of his office. The framers of our constitution never intended that there should be any interim in which the affairs of state were not executed for they said in explicit language that upon the happening of *any* of the contingencies mentioned in section 6, article 5, supra, the powers and duties of the office of governor were to be immediately transferred to the secretary of state who was then given a mandate to discharge the duties of the office for the residue of the term for which the governor was elected. He, as secretary of state, acts

as governor and is empowered to perform all the duties of that office, and his official acts performed as acting governor are valid. McCluskey v. Hunter, 33 Ariz. 513, 266 P. 18.

While a legislative interpretation is not binding upon us, it is nevertheless entitled to respectful consideration. We find that as long as 1922 the legislature, in enacting section 4-204, supra, was aware of the contingencies contained in the constitutional provision under consideration, and considered that there would be occasions when the secretary of state was "acting governor." The code section specifically provides that when the secretary of state is "acting governor" the assistant secretary of state shall perform the duties of the secretary.

We have observed that the prevailing view is that an inferior officer does not vacate his office and become governor de jure and de facto where the several constitutions provide merely that the duties and powers of the office devolve upon him. See Annotation, Ann.Cas.1915A, 577, at page 579. Opposed to the authorities just considered are three cases, all from one jurisdiction, namely, Oregon. In the reported case of Chadwick v. Earhart, 11 Or. 389, 4 P. 1180, the court had before it for consideration the constitutional provision reading as follows:

"In case of the removal of the governor from office, or of his death, resignation, *or inability to discharge the duties of the office, the same shall devolve on the secretary of state;* and in case of the removal from office, death, resignation, or inability, both of the governor and secretary of state, the president of the senate shall act as governor until the disability be removed or a governor be elected." (Emphasis supplied.) Section 8, article 5.

The court in analyzing grammatically the section held that the word "same" related to and qualified the word "office" and that in legal effect the section should read "In case of the removal of the governor from office or of his death, resignation, or inability to discharge the duties of the office, the office itself shall devolve upon the secretary of state."

In the later case of Olcott v. Hoff, 92 Or. 462, 181 P. 466, 470, the Oregon court again had before it for consideration the same section of the constitution and was asked to review its decision in the Chadwick case. It was called to the attention of the court that many courts had refused to accept its interpretation in the Chadwick case as sound law. The justice who wrote the prevailing opinion was still of the opinion that the grammatical interpretation made in the Chadwick case was correct. He attempted to distinguish the cases from Wyoming, Nevada, New Jersey, California, Colorado, Minnesota, Washington, and Akansas by stating:

"It will be noted that in all of the sections quoted it is not the office, but the powers and duties of the office, which

devolve upon his successor in the event of the death of the governor. The importance of that distinction is clearly pointed out by the recent decision of the supreme court of Arkansas in construing the constitution of that state in the case of Futrell v. Oldham, supra, where the opinion says: 'If the framers of the constitution had intended to provide for the devolution of the office of governor, in case of vacancy by resignation or otherwise, upon the president of the senate, that intention could easily have been directly expressed in appropriate words. But they chose other terms which clearly observe the distinction between the course of succession of the office itself and a mere devolution of the duties and the emoluments of the office for the time being, and deliberately adopted the latter as the best means of having the government administered until the people themselves can elect a governor.' "

Mr. Justice Harris of that court, in a separate opinion concurring in part, made this observation of the Chadwick decision:

" * * * If article 5, § 8, of the state constitution, were now for the first time presented for judicial construction I would, for reasons which to me are not only persuasive but convincing, take the view that upon the removal, death, resignation, or inability of the governor to discharge the duties of the office, the secretary of state becomes merely ex officio governor. In other words, it is my opinion that a correct construction of the constitution only empowered Chadwick to act as governor until he ceased to be secretary of state and then the duties of the office of the governor devolved upon Earhart, the succeeding secretary of state, until Thayer qualified as governor; or, applying what I conceive to be the meaning of the constitution to the instant case, because and only because he is secretary of state, Ben W. Olcott would perform the duties of governor until his term as secretary of state expires on the first Monday in January, 1921, when his successor's term as secretary of state shall begin, and such successor would then discharge the duties of governor until the speaker of the house of representatives at the session to be held in 1921 publishes the vote for governor. * * * "

This justice in stating that the doctrine of stare decisis should never be resorted to where an opinion was clearly and manifestly erroneous and capable of producing injustice and hardship, nevertheless for other considerations, adhered to the original decision in the Chadwick case.

In State v. Olcott, 94 Or. 633, 187 P. 286, 290, the court was again confronted with a contingency growing out of its previous interpretations. In this case, Mr. Justice Bennett in a specially concurring opinion, made reference to the original decision in the Chadwick case and the observations of Mr. Justice Harris in Olcott v. Hoff, supra:

"After much consideration and some hesitation, I feel compelled to concur in the opinion of Mr. Justice Johns upon the ground of stare decisis only. It seems to me that the case of Chadwick v. Earhart, 11 Or. 389, 4 P. 1180, is directly in point and is controlling. If it were not for that case and if the question was here as a matter of first impression, I should be governed by the reasoning of Mr. Justice Harris when the question was under consideration in Olcott v. Hoff, which seems to me to present, as a matter of logic, the stronger considerations."

We do not consider the decision in Chadwick v. Earhart, supra, as persuasive or authoritative. The interpretation of that case was based on the language of the constitutional provision, and we sincerely believe was not justified. In any event our constitutional provision specifically provides that "the powers and duties of the office shall evolve upon the secretary of state * * *." This section is not susceptible of the interpretation that the *office* shall devolve upon the secretary of state. Having concluded that the *office* of governor does not devolve upon the secretary of state and that Dan E. Garvey is still secretary of state and. only ex officio or acting governor, it is apparent that he is not legally entitled to any extra compensation for the performance of services or duties which pertain to his office of secretary of state. By law the incumbent of an office is bound to perform all of the duties belonging to it without extra compensation. As was said in United States v. Smith, 27 Fed.Cas. 1139, page 1141, No. 16,321:

" * * * No man is under any necessity to accept an office, but having accepted it, the obligation rests upon him to discharge its duties for the remuneration which the law provides. He accepts it with a knowledge of the pay or salary attached to it, and, though its duties may be onerous, and the compensation inadequate, if he chooses to retain the office he must be content with what the law gives."

The respondent took oath to perform the duties of secretary of state. His duties embrace the responsibility to act as governor in case any of the contingencies provided for in the constitutional provision arise. Walls v. Hall, 202 Ark. 999, 154 S.W.2d 573, 136 A.L.R. 1047.

We, therefore, hold that respondent Garvey is not governor de jure or de facto but merely ex officio or acting governor invested by constitutional mandate with all of the powers and duties of that high office, which devolve upon him by virtue of the fact that he is secretary of state. Respondent, however, is entitled to physical possession of the office space and facilities provided for the chief executive of the state, but as no provision has been made that the emoluments of the office of governor inure to the secretary of state when acting governor he is en-

312

titled only to the compensation provided for the secretary of state.

It is the judgment of this court and it is hereby ordered that the Honorable Dan E. Garvey be and he is hereby precluded from holding or exercising the office of governor of the state of Arizona other than as secretary of state and acting governor. Let the mandate of the court issue forthwith.

STANFORD, C. J., and UDALL, J., concur.