STATE ex Rel. ARTHUR F. LAMEY, Relator, *v.* SAM W. MITCHELL, Secretary of State, Respondent.

(No. 7,306.)

STATE ex Rel. J. W. SPEER, Relator, *v.* SAM W. MITCHELL, Secretary of State, Respondent.

(No. 7,307.)

STATE ex Rel. HUGH R. ADAIR, Relator, *v.* SAM W. MITCHELL, Secretary of State, Respondent.

(No. 7,308.)

FRANK A. HAZELBAKER, Plaintiff, *v.* SAM W. MITCHELL, Secretary of State, Defendant.

(No. 7,309.)

STATE ex Rel. W. R. CHURCH, Relator, *v.* SAM W. MITCHELL, Secretary of State, Respondent.

(No. 7,310.)

H. R. EICKEMEYER, Plaintiff, *v.* SAM W. MITCHELL, Secretary of State, Defendant.

(No. 7,311.)

STATE ex Rel. HOWARD A. JOHNSON, Relator, *v.* SAM W. MITCHELL, Secretary of State, Respondent.

(No. 7,313.)

(Submitted June 11, 1934. Decided June 13, 1934.)

[34 Pac. (2d) 369.]

*Mr. Howard Toole, Mr. H. C. Hall, Mr. M. M. Duncan* and *Mr. John B. Tansil,* for Relator Arthur F. Lamey, submitted an original and a supplemental brief; *Messrs. Toole* and *Hall* argued the cause orally.

*Mr. E. G. Toomey, Mr. Charles Davidson, Mr. Fred L. Gibson* and *Mr. C. August Linn,* for Relator J. W. Speer, submitted a brief; *Mr. Toomey* argued the cause orally.

*Mr. C. A. Spaulding* and *Mr. Hugh R. Adair* (appearing *pro se*), for Relator Adair, submitted a brief and argued the cause orally.

*Mr. Albert J. Galen,* for Plaintiff Frank A. Hazelbaker, submitted a brief and argued the cause orally; *Messrs. Brown & Jones, Mr. A. J. Poore, Mr. W. J. Paul, Mr. Earle Genzberger, Mr. John L. Campbell, Mr. T. C. Busha, Jr., Messrs. Marron & Foor, Messrs. Gilbert, Gilbert & McFadden, Mr. C. August Linn, Mr. Robert O'Hara, Messrs. Loud & Choate* and *Mr. George W. Farr,* of Counsel.

*Mr. J. R. Wine,* for Relator W. Ray Church.

*Mr. P. G. Greenan* and *Mr. LaRue Smith,* for Plaintiff H. R. Eickemeyer, submitted a brief.

*Mr. Lloyd I. Wallace, Mr. Donovan Worden, Mr. Clarence E. Wohl, Mr. Benjamin P. Harwood, Mr. C. F. Holt, Mr. George W. Padbury, Jr.,* and *Mr. S. C. Ford,* for Plaintiff Howard A. Johnson, submitted a brief; *Mr. Ford* argued the cause orally.

*Mr. Raymond T. Nagle,* Attorney General, and *Mr. Enor K. Matson,* Assistant Attorney General, for Respondent, submitted a brief; *Mr. Matson* argued the causes orally.

HONORABLE S. D. McKINNON, District Judge, sitting in place of MR. JUSTICE ANGSTMAN, delivered the opinion of the court.

Relators ask for writs of mandate to compel the Secretary of State to file their primary nominating petitions and to print their names on the ballot for the primary election to be held July, 1934.

At the general election in 1932, Honorable J. E. Erickson and Honorable Frank H. Cooney were elected Governor and Lieutenant-Governor, respectively, of the state of Montana. On the thirteenth day of March, 1933, Erickson resigned. On the sixth day of June, 1934, the relators tendered to the Secretary of State their primary nominating petitions for the primary election to be held July 17, 1934, for the following offices, namely, for Governor, J. W. Speer, as Republican candidate; A. F. Lamey, as Democratic candidate. For Lieutenant-Governor on the Republican ticket, Frank A. Hazelbaker and Howard A. Johnson; and on the Democratic ticket, Hugh R. Adair, W. Ray Church and H. Eickemeyer. All these petitions were refused by the Secretary of State, and each candidate has asked that the Secretary of State be compelled to file his petition, and that his name appear on the ballot at the primary nominating election for the particular office above mentioned.

These six applications for writs of mandate were consolidated for the purpose of argument, and will be so treated in this opinion. One question is presented for decision, namely:

Is there a vacancy in either the office of Governor or Lieutenant-Governor?

Section 1 of Article VII of the Constitution provides: "The executive department shall consist of a governor, lieutenant-governor, secretary of state, attorney general, state treasurer, state auditor and superintendent of public instruction, each of whom shall hold his office for four years, or until his successor is elected and qualified. * * * They shall perform such duties as are prescribed in this constitution and by the laws of the state. * * * "

It will be noted by the foregoing provision that the term of the Governor and the Lieutenant-Governor is four years, or until their successor is elected and qualified. The word "term" applies to the office and not to the person. (*State ex rel. Kuhl* v. *Kaiser*, 95 Mont. 550, 27 Pac. (2d) 1113; *State ex rel. Morgan* v. *Knight*, 76 Mont. 71, 245 Pac. 267.)

Section 14 of Article VII reads: "In case of the failure to qualify, the impeachment or conviction of felony or infamous crime of the governor, or his death, removal from office, resignation, absence from the state, or inability to discharge the powers and duties of his office, the powers, duties and emoluments of the office, for the residue of the term, or until the disability shall cease, shall devolve upon the lieutenant-governor."

It will thus be seen that when the Governor resigns or is permanently removed from office, there is no vacancy in the office of Governor in the sense that there is no one left with power to discharge the duties imposed upon the Governor. The same situation exists where the Governor is absent from the state or physically unable to discharge the duties of his office. The framers of the Constitution never intended that there should be any interim in which the affairs of the state should not be executed, for they said in explicit language that on the happening of any of the contingencies mentioned in section 14, supra, the powers, duties and emoluments of the office were to be immediately transferred to the Lieutenant-Governor, who is then given a mandate to discharge the duties

of the office for the residue of the term for which the Governor was elected. He, as Lieutenant-Governor, acts as Governor and is empowered to perform the duties of that office.

While the legislative interpretation is not binding on us, it is nevertheless entitled to respectful consideration. We find that as early as 1895 the legislature of this state treated the Lieutenant-Governor, when he performed the duties of Governor, as acting Governor. This is disclosed in section 132, Revised Codes of 1921, as follows: "When the lieutenant-governor acts as governor, he is entitled to receive during the time he so acts, the compensation which the governor, if acting, would be entitled to receive for such time; but during such time he is not entitled, as lieutenant-governor, to any other compensation or mileage."

There can be no vacancy in an office when there is a person clothed with authority to perform its duties. In *State ex rel. Chenoweth* v. *Acton,* 31 Mont. 37, 77 Pac. 299, 300, the court, speaking through Mr. Commissioner Callaway, said: "The word 'vacancy,' as applied to an office, has no technical meaning. An office is not vacant so long as it is supplied, in the manner provided by the Constitution or law, with an incumbent who is legally qualified to exercise the powers and perform the duties which pertain to it; and, conversely, it is vacant, in the eye of the law, whenever it is unoccupied by a legally qualified incumbent, who has a lawful right to continue therein until the happening of some future event."

In *State ex rel. Murphy* v. *McBride,* 29 Wash. 335, 70 Pac. 25, 26, a Governor and a Lieutenant-Governor were elected at the general election in November, 1900, for the term of four years. On December 26, 1901, the Governor died, and it was urged that there was a vacancy in the office of Governor and also in the office of Lieutenant-Governor. The constitutional provision (Art. III, sec. 10) which was under consideration read as follows: "In case of the removal, resignation, death, or disability of the governor, the duties of the office shall devolve upon the lieutenant-governor, and in case of a vacancy in both the offices of governor and lieutenant-governor, the

duties of governor shall devolve upon the secretary of state, who shall act as governor until the disability be removed or a governor be elected.'' It will be noted that this constitutional provision does not provide that upon the resignation of the Governor, the Lieutenant-Governor shall serve for the residue of the term. The court, in discussing the question of vacancy, said: "It is a well-settled rule that an office is not vacant so long as it is supplied, in the manner provided by the constitution or laws, with an incumbent who is legally authorized to exercise the power and perform the duties which pertain to it. * * * The Constitution having provided that in case of the death of the governor the duties of the office shall devolve upon the lieutenant-governor, there is no vacancy in the office of governor. It is not necessary to discuss the meaning of the provision 'who shall act as governor until the disability be removed or a governor be elected,' because that provision, as used here, clearly refers only to the secretary of state, in case that officer should assume the duties of governor under the contingency named. What is said above applies equally to the lieutenant-governor. When the lieutenant-governor, by virtue of his office and of the command of the Constitution, assumed the duties of governor on the death of Governor Rogers, the office of lieutenant-governor did not thereby become vacant, but the officer remained lieutenant-governor, intrusted with the powers and duties of governor.''

Our attention has been called to the language of this court in *State ex rel. McGowan* v. *Sedgwick*, 46 Mont. 187, 127 Pac. 94, in which it is stated that upon the resignation of the Governor there is a vacancy in that office, but we do not consider it binding, for the reason that that was not the question under consideration in that case.

It is urged that upon the happening of any of the contingencies mentioned in section 14, supra, the Lieutenant-Governor by exercising the powers and duties of the Governor acts also as Lieutenant-Governor, and that he cannot hold two offices. This argument is answered by section 15 of Article VII of the Constitution, as follows: ''The lieutenant-governor

shall be president of the senate, but shall vote only when the senate is equally divided. In case of the absence or disqualification of the lieutenant-governor, from any cause which applies to the governor, or when he shall hold the office of governor, then the president *pro tempore* of the senate shall perform the duties of the lieutenant-governor until the vacancy is filled or the disability removed."

The argument is also answered in the case of *State ex rel. Murphy* v. *McBride,* supra, in which the court says: "It is argued, however, that since it is made the duty of the lieutenant-governor, under the constitution, to be presiding officer of the state senate (sec. 16, Art. III), and as such to approve all bills passed by that body, he must, as governor, review and approve or reject bills which as lieutenant-governor he has already approved. These duties are, no doubt, inconsistent; but this argument, we think, is fully met by another provision of the Constitution, which provides, at section 10, Article II, in substance, that when the lieutenant-governor shall act as governor the senate shall choose a temporary president. The lieutenant-governor, therefore, when the duties of governor devolve upon him, is relieved of the duties of presiding officer of the senate." (See, also, *Clifford* v. *Heller,* 63 N. J. L. 105, 111, 42 Atl. 155, 57 L. R. A. 312; *Futrell* v. *Oldham,* 107 Ark. 386, 392, 155 S. W. 502, Ann. Cas. 1915A, 571.)

When the framers of the Constitution provided for the election of a Governor and a Lieutenant-Governor as members of the executive department of the state (sec. 1, Art. VII), but conferred upon the latter no executive power or authority other than in the contingencies mentioned in section 14, supra, they manifested the intention that the people elect two qualified heads of that department—the one active, the other his lieutenant, ready at a moment's notice to assume the duties of the office, should his superior officer, for any reason, either temporarily or permanently, become unable to perform them. This to the end that the important functions of state government should not falter or halt for an instant.

It cannot be said that this arrangement violates section 1 of ▉ Article III, to the effect that all political power is vested in and derived from the people, in that it deprives them of the right of electing a Governor; as the people are presumed to know the law and are certainly conversant with human frailty, they must be presumed to have chosen a Lieutenant-Governor with the knowledge that, at any time during the term for which he and the Governor were elected, he might be called upon to exercise the powers and discharge the duties of governor "for the residue of the term."

Neither do we think that upon resignation, death or permanent removal of the Governor there is a vacancy in the office of Lieutenant-Governor. In any such event he, as Lieutenant-Governor, shoulders immediately the duties of Governor, and while "he holds the office of governor," the president *pro tempore* of the senate performs the duties which theretofore devolved upon the Lieutenant-Governor. When the duties, powers and emoluments of the office of Governor devolve upon the Lieutenant-Governor, it cannot be said that he vacates his office of Lieutenant-Governor, and, unless he does so, there is no vacancy in his office. (Sec. 511, Rev. Codes 1921.) His assumption of the duties of the office of Governor does not create, and neither can he make, a vacancy, as he is discharging the functions of Governor by the mandate of the Constitution, and that by reason of being Lieutenant-Governor. If the framers of the Constitution had intended that there should be a vacancy in the office of Lieutenant-Governor upon the resignation, death or permanent removal of the Governor, they could have easily said so. They chose, however, to say that upon the happening of either of those contingencies the Lieutenant-Governor should assume the duties of the office and discharge them for the residue of the term.

It would be idle to say that upon the resignation of the Governor there was thereby created a vacancy in the office of Lieutenant-Governor, in view of the specific language of sections 14 and 15, supra. If that be true, then the Lieutenant-

Governor, upon assuming the powers and duties of the Governor, would be entitled to appoint a Lieutenant-Governor. In this manner he could divest the people of their representative chosen by the legislature, namely, the president *pro tempore*, to preside during the absence of the Lieutenant-Governor. In our opinion this was never contemplated and never intended by the framers of the Constitution, or the people who adopted it.

Then, again, if the Governor were absent from the state or unable temporarily to perform the duties of his office, it could hardly be argued that while the Lieutenant-Governor was discharging the duties of the office of Governor, he could appoint a Lieutenant-Governor. In such a case the "disability" of the Governor may cease at any time, and he thereupon assumes the duties of his office.

In view of the fact that it is our opinion that there is neither a vacancy in the office of Governor nor the office of Lieutenant-Governor, other questions presented in these cases need not be considered.

The writs are denied and the several proceedings dismissed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS and ANDERSON concur; MR. JUSTICE STEWART concurring in the result reached.