STATE OF MISSOURI at the Relation of J. EDWARD GRAGG, Relator, v. HONORABLE JESSE W. BARRETT, HONORABLE WILLIAM J. BLESSE, HONORABLE A. SIDNEY JOHNSTON and HONORABLE ALPHONSE G. EBERLE, as Members and constituting the Board of Election Comsioners of the City of St. Louis, and HONORABLE JOSEPH GALLAGHER, City Register of the City of St. Louis.—No. 39125.—180 S. W. (2d) 730.

Court en Banc, June 5, 1944.

*William R. Schneider* for relator.

*Joseph F. Holland,* City Counselor, *H. A. Hamilton, George L. Stemmler* and *Charles J. Dolan,* Associate City Counselors, for respondents.

DOUGLAS, C. J.—J. Edward Gragg brings this original proceeding in mandamus to compel the City Register of St. Louis to certify to the Board of Election Commissioners of St. Louis that a vacancy exists in the office of President of the Board of Aldermen and to compel the Board of Election Commissioners to accept his declaration of candidacy for that office and to print his name on the ballot for the primary election to be held on August 1, 1944.

If the office of president of the board of aldermen is vacant respondents should have accepted Gragg's declaration of candidacy. If the office is not vacant its refusal to do so is proper.

██ William Dee Becker, the Mayor of St. Louis, died in an airplane accident on August 1, 1943. Upon that event Aloys P. Kaufmann, the President of the Board of Aldermen became Mayor. Edgar S. Nicolai, Vice President of the Board stepped up to the presidency. See our opinion in State ex rel. Nicolai v. Nolte et al., ·352 Mo. 1069, 180 S. W. (2d) 740, handed down with this case. These changes were pursuant to Article VII, Section 5 of the St. Louis Charter which provides: "Whenever a vacancy occurs in the office of mayor, the president of the board of aldermen shall become mayor, and shall hold such office until a successor is elected and qualifies. Such election, if for an unexpired term, shall be at the first general city or state election held fifty days or more after such vacancy occurs. While so holding the office of mayor a temporary vacancy shall exist in the office of the president of the board of aldermen. The vice-president of the board of aldermen shall hold the office of president of said board during any vacancy therein with the right of succession to the office of mayor."

██ Gragg contends that under such charter provision the office of president became vacant and is required to be filled at the coming election under Article IV of the charter entitled Board of Aldermen which provides in Section 5: "Any vacancy in said board shall be filled for the unexpired term at the next general city or state election held fifty days or more after such vacancy occurs; provided, that whenever three or more vacancies exist in said board such vacancies shall be filled at a special election; but no such special election shall be held within three months prior to any general city or state election."

The two charter provisions are in apparent conflict. In construing the charter we must give effect to the intent of the framers. Each provision should be construed so as to harmonize with the others. But when general and special provisions are in conflict the special provision will control as far as its scope demands, leaving the general provision to control in cases where the special provision does not apply. Consequently the provision of the charter referring generally to filling any vacancy in the board must give way to the more particular provision which provides that the vice president of the board shall fill the office of president during a vacancy in that office in so far as the latter provision controls.

There is an unusual circumstance in this case in that the president vacates his office only temporarily while serving as mayor. This fact controls the decision of this case. Therefore, we need only rule for the purpose of this case that the general provision for filling vacancies in the board of aldermen by election does not apply

to a temporary vacancy in the office of president. Such a vacancy is filled by the vice president by operation of the special provision of the charter.

The intention of the framers is apparent that the president might resume his former office after the office of mayor had been filled by election. Otherwise, no meaning can be ascribed to the word temporary because, as the parties point out, all vacancies in public office are temporary. ██ The law invariably provides for filling them as quickly as practical. The charter could not have permitted the president to retain his office while filling a vacancy in the office of mayor because the constitution forbids a person to fill two municipal offices at the same time. Art. IX, sec. 18. Otherwise the charter could have made the familiar provisions found in our State and National Constitutions for the next in order to assume the duties of the chief executive when that office becomes vacant because of death or disability.

The construction placed upon the charter provision holding that the president only temporarily vacates his office is a reasonable one. The mayor and the president are elected separately at two-year intervals each for a term of four years. It could happen that the president might serve as mayor only for a very short period. The scheme of the charter is to fill the office of mayor by election as quickly as practical. If by serving as mayor only for a short period the president would permanently vacate his own office, he might have to give up more than half of his term in some cases. This result would be unreasonable especially in such a case as this where the president's duty to fill the mayor's office is not left to his choice, but is a duty imposed by law.

██ Relator argues that the offices of mayor and president are incompatible. Certainly the constitutional prohibition against filling two municipal offices makes them so. But the settled rule of the common law that a public officer cannot hold two incompatible offices at the same time is not pertinent in view of the charter provision that the president vacates his own office while he serves as mayor. Nor is the rule pertinent that the acceptance of a second office, which is incompatible to an office already held, ipso facto vacates the first office because the charter itself provides for a temporary vacation only. Furthermore, the rule is based on the presumption that the acceptance of the second office indicates the exercise of a choice between the two and the consequent relinquishment of the first office. Such presumption cannot exist where the second office is imposed by law and a person is compelled to accept it.

██ At this time there is no vacancy in the office of president of the board of aldermen to be filled by election. The city register in refusing to certify that a vacancy exists and the board of election com-

1082.

missioners in refusing to accept Gragg's declaration of candidacy acted properly. Our peremptory writ of mandamus should be denied.

It is so ordered. All concur.