J. MAX THOMAS, PETITIONER v. STATE BOARD OF ELECTIONS, DAVID M. McCONNELL, CHAIRMAN; WARREN R. WILLIAMS, JOSEPH E. ZAYTOUN, ROBERT S. EWING, DAN S. JUDD, MEMBERS OF THE STATE BOARD OF ELECTIONS; AND RAYMOND C. MAXWELL, EXECUTIVE SECRETARY, RESPONDENTS.

(Filed 28 February, 1962.)

1. **Lieutenant-Governor; Elections § 1—**

The succession of Governor and Lieutenant-Governor is fixed by the Constitution, and therefore when a Lieutenant-Governor dies during his term the Constitution excludes the right to have the vacancy in the office filled prior to the expiration of the term, and G.S. 163-7 does not apply in regard to the offices of Governor and Lieutenant-Governor.

2. **Lieutenant-Governor; Constitutional Law § 9—**

When a vacancy occurs in the office of Lieutenant-Governor, the powers, duties and emoluments of the office devolve upon the President of the Senate who shall discharge the duties and powers of the office of Lieutenant-Governor for the unexpired portion of the term to which the Lieutenant-Governor was elected.

3. **Constitutional Law § 2—**

In the construction of the Constitution all cognate provisions are to be considered and construed together to effectuate the will of the people as expressed in the instrument.

4. **Mandamus § 1—**

Mandamus is an extraordinary writ which issues only when there is no other adequate remedy, and may be employed only to enforce a clear legal right or the performance of a ministerial duty at the instance solely of the party entitled to demand such performance against the party under clear legal obligation to perform the act or grant the relief.

WINBORNE, C.J., not sitting.

APPEAL by petitioner from judgment entered by *Bickett, J.,* on 23 January 1962, after hearing the matter in Chambers in Raleigh, North Carolina, on 20 January 1962. From WAKE Superior Court.

This is a proceeding instituted in the Superior Court of Wake County by the petitioner, J. Max Thomas, who seeks to have the court issue in his behalf a writ of mandamus compelling respondent State Board of Elections to accept his filing fee and certify him as a Candidate for the office of Lieutenant-Governor of North Carolina in the primary election to be held in the year 1962, to fill the unexpired term of the late H. Cloyd Philpott as Lieutenant-Governor of North Carolina.

The petitioner tendered a notice of candidacy and a filing fee of $21.00 to the respondents on 15 December 1961. Petitioner is seeking to become a candidate of the Democratic Party for the office of Lieutenant-Governor in the primary to be held in May 1962.

Respondents answered the petition and denied the legal right of the petitioner to become a candidate for such office and alleged that said office was not open for the filing of candidates and would not be until the primary to be held in 1964.

The respondents filed a demurrer *ore tenus* to the petition and the matter was heard before his Honor, William Y. Bickett, Resident Judge of the Tenth Judicial District, in Chambers in the Wake County Courthouse in Raleigh, North Carolina, on 20 January 1962.

There were no questions or issues of fact to be determined or passed upon. It was admitted that the petitioner tendered the proper filing fee, and that he is eligible in all respects to become a candidate of the Democratic Party for the office of Lieutenant-Governor of this State if, under the Constitution and laws of this State, the year 1962 and the primary to be held in said year is the proper time for the election of a candidate to fill such office. Therefore, the matter was heard upon the pleadings and the demurrer interposed by the respondents and upon argument of counsel.

His Honor sustained the demurrer *ore tenus,* ordered that no writ of mandamus issue, and dismissed the proceeding. Judgment was entered accordingly.

The petitioner appeals to this Court, assigning error.

*Attorney General Bruton, Asst. Attorney General Moody for the respondents.*

*Floyd Crouse; Joe Branch; Irving E. Carlyle for the petitioner.*

DENNY, J. The question presented for determination arises out of the following factual situation: The Honorable H. Cloyd Philpott was

elected Lieutenant-Governor of this State for a term of four years in the general election in November 1960, and took the oath of office and entered upon the duties of the office in January 1961. He died on 19 August 1961.

As a matter of history, the Honorable Tod R. Caldwell was elected Governor and the Honorable Curtis H. Brogden was elected Lieutenant-Governor of North Carolina for four-year terms in 1872. Governor Caldwell died on 11 July 1874. Lieutenant-Governor Brogden took the oath of office as Governor on 14 July 1874. See Governor's Message to the General Assembly, reported in the Journal of the House, Session 1874-75, begininng on page 21.

It might be well to note that the succession of Lieutenant-Governor Brogden to the office of Governor is the only instance in the history of this State since the office of Lieutenant-Governor was created by the Constitutional Convention of 1868, when the Lieutenant-Governor succeeded to the Governorship before the midterm general election. In each other instance in which a Lieutenant-Governor has succeeded to the Governorship in this State, the vacancy in the office of Governor occurred after the midterm general election had been held. However, Governor Caldwell having died on 11 July 1874, less than thirty days prior to the next general election held on 6 August 1874, the question now before this Court has never been, nor could it have been, raised until the death of Lieutenant-Governor Philpott.

Therefore, the determinative question presented on this appeal is simply this: Is the succession of Governor and Lieutenant-Governor fixed by our Constitution, thereby excluding the right to have the vacancy in the office of Lieutenant-Governor filled by election prior to November 1964?

In considering the question presented, it is well to keep in mind that the offices of Governor and Lieutenant-Governor, aside from the powers and duties, are treated in the same constitutional manner. For example: The offices of the Executive Department of the State government were established and the terms fixed by the provisions of Article III, Section 1 of the Constitution of North Carolina, which reads as follows: "OFFICERS OF THE EXECUTIVE DEPARTMENT; TERMS OF OFFICE. — The executive department shall consist of a Governor, in whom shall be vested the supreme executive power of the State; a Lieutenant-Governor, a Secretary of State, an Auditor, a Treasurer, a Superintendent of Public Instruction, an Attorney General, a Commissioner of Agriculture, a Commissioner of Labor, and a Commissioner of Insurance, who shall be elected for a term of four years by the qualified electors of the State, at the same time and places and in the same manner as members of the General Assembly

are elected. Their term of office shall commence on the first day of January next after their election, and continue until their successors are elected and qualified: Provided, that the officers first elected shall assume the duties of their office ten days after the approval of this Constitution by the Congress of the United States, and shall hold their offices four years from and after the first day of January."

The eligibility requirements of the Governor and Lieutenant-Governor are set out in the Constitution and are the same. Article III, Section 2 of the Constitution is as follows: "QUALIFICATIONS OF GOVERNOR AND LIEUTENANT-GOVERNOR. — No person shall be eligible as Governor or Lieutenant-Governor unless he shall have attained the age of thirty years, shall have been a citizen of the United States five years, and shall have been a resident of this State for two years next before the election; nor shall the person elected to either of these two offices be eligible to the same office more than four years in any term of eight years, unless the office shall have been cast upon him as *Lieutenant-Governor or President of the Senate.*" (Emphasis added)

There is certainly no denial of the fact that when the office of Governor becomes vacant, there is a constitutional plan of succession other than by an election, to fill the vacancy for the unexpired term. It is necessary, therefore, to examine the several sections of the Constitution bearing on the duties of the Lieutenant-Governor and the procedure to be followed when the "powers, duties and emoluments of the office of Governor shall devolve" upon the Lieutenant-Governor and he is unable to act.

Article III, Section 11 prescribes the duties of the Lieutenant-Governor as follows: "DUTIES OF THE LIEUTENANT-GOVERNOR. — The Lieutenant-Governor shall be President of the Senate but shall have no vote unless the Senate be equally divided. He shall receive such compensation as shall be fixed by the General Assembly."

Article III of the Constitution deals with the Executive Department of our State government. The Lieutenant-Governor is an officer of the Executive Department. Even so, Article II of our Constitution which deals with the Legislative Department of the government, in Section 19, provides as follows: "PRESIDENT OF THE SENATE. — The Lieutenant-Governor shall preside in the Senate, but shall have no vote unless it may be equally divided." Article II further contains the following provisions in Section 20: "OTHER SENATORIAL OFFICERS. — The Senate shall choose its other officers and also a speaker (pro tempore) in the absence of the Lieutenant-Governor, or when he shall exercise the office of Governor."

The constitutional method of succession is set out in Article III,

Section 12 of our Constitution which reads as follows: "IN CASE OF IMPEACHMENT OF GOVERNOR, OR VACANCY CAUSED BY DEATH OR RESIGNATION. — In case of the impeachment of the Governor, his failure to qualify, his absence from the State, his inability to discharge the duties of his office, or, in case the office of Governor shall in anywise become vacant, the powers, duties and emoluments of the office shall devolve upon the Lieutenant-Governor until the disabilities shall cease or a new Governor shall be elected and qualified. In every case in which the Lieutenant-Governor shall be unable to preside over the Senate, the senators shall elect one of their own number president of their body; and the powers, duties and emoluments of the office of Governor shall devolve upon him whenever the Lieutenant-Governor shall, for any reason, be prevented from discharging the duties of such office as above provided, and he shall continue as acting Governor until the disabilities be removed, or a new Governor or Lieutenant-Governor shall be elected and qualified. Whenever, during the recess of the General Assembly, it shall become necessary for the President of the Senate to administer the government, the Secretary of State shall convene the Senate, that they may elect such president."

We think the provisions of our Constitution clearly point out upon whom the powers, duties and emoluments of the offices of Governor and Lieutenant-Governor shall devolve in the event of a vacancy in either or both of said offices. We think this view is further supported by the provisions of Section 13 of Article III in our Constitution which reads as follows: "DUTIES OF OTHER EXECUTIVE OFFICERS. — The respective duties of the Secretary of State, Auditor, Treasurer, Superintendent of Public Instruction, Attorney General, Commissioner of Agriculture, Commissioner of Labor, and Commissioner of Insurance shall be prescribed by law. If the office of any of said officers shall be vacated by death, resignation, or otherwise, it shall be the duty of the Governor to appoint another until the disability be removed or his successor be elected and qualified. Every such vacancy shall be filled by election at the first general election that occurs more than thirty days after the vacancy has taken place, and the person chosen shall hold the office for the remainder of the unexpired term fixed in the first section of this article: Provided, that when the unexpired term of any of the offices named in this section in which such vacancy has occurred expires on the first day of January succeeding the next general election, the Governor shall appoint to fill said vacancy for the unexpired term of said office." This last proviso was authorized by Chapter 1033 of the North Carolina Session Laws of 1953,

and submitted to and approved by a vote of the people at the general election held on 2 November 1954.

It will be noted that the offices of Commissioner of Agriculture, Commissioner of Labor, and Commissioner of Insurance, have been created since the adoption of the Constitution in 1868 and Sections 1 and 13 of Article III of the Constitution amended to include these offices in the Executive Department of the State government.

The petitioner contends that his petition for a writ of mandamus is clearly supported by the provisions of G.S. 163-7, reading as follows: "FOR VACANCIES IN STATE OFFICES. — Whenever any vacancies shall exist by reason of death, resignation, or otherwise, in any of the following offices, to wit, Secretary of State, Auditor, Treasurer, Superintendent of Public Instruction, Attorney General, Solicitor, Justices of the Supreme Court, judges of the superior court, or any other State officer elected by the people, the same shall be filled by elections, to be held in the manner and places and under the same regulations and rules as prescribed for general elections, at the next regular election for members of the General Assembly which shall occur more than thirty days after such vacancy, except as otherwise provided for in the Constitution."

In our opinion, when the General Assembly enacted the foregoing statute, it clearly recognized that the Governor and the Lieutenant-Governor were not subject to its provisions and that is the reason the statute contains the provision, "except as otherwise provided for in the Constitution."

Moreover, the Constitution does not otherwise provide except as to the offices of Governor and Lieutenant-Governor.

If it had been the intent of the framers of the Constitution to authorize or require the election of a successor to fill a vacancy in the office of Lieutenant-Governor, as required with respect to the offices named in the Constitution in Section 13, Article III, then we can think of no sound reason why the framers of the Constitution did not include the office of Lieutenant-Governor in Section 13, Article III of the Constitution. Every office in the Executive Department of the State government created by the Constitutional Convention of 1868, was named in Section 13 of Article III of the Constitution, and the manner of succession in the event of a vacancy in any of said offices is explicitly set out therein, except the offices of Governor and Lieutenant-Governor.

Moreover, in each of the offices named in Section 13, Article III of the Constitution in which a vacancy is required to be filled, the duty is imposed upon the Governor to appoint another to fill the office until a successor is elected and qualified.

Consequently, if the contentions of the petitioner are correct, we can think of no valid reason why the Governor should not have appointed a successor to Lieutenant-Governor Philpott immediately after his death, to serve until the next general election. We hold, however, there is no constitutional provision which authorizes the Governor to appoint a successor to Lieutenant-Governor Philpott, to fill out the vacancy now existing by reason of his death. Furthermore, no Governor has ever attempted to appoint another to fill a vacancy in the office of Lieutenant-Governor.

Here, again, we think the framers of the Constitution deliberately and advisedly provided for the succession of Governor and Lieutenant-Governor otherwise than by election, thereby withholding from the Governor the power to name his potential successor. On the other hand, whenever it becomes necessary for a President of the Senate to be elected, upon whom the powers, duties and emoluments of the office of Governor or Lieutenant-Governor may devolve, the power and responsibility for electing a President of the Senate is vested by the Constitution in that body. Section 12, Article III of the Constitution of North Carolina.

The factual situation involved in this appeal is not controlled by the decision in *Rodwell v. Rowland*, 137 N.C. 617, 50 S.E. 319.

We hold that the Constitution provides for the succession of the Governor and the Lieutenant-Governor and does not authorize a vacancy in either office to be filled at an election for any portion of an unexpired term. Section 12, Article III of the Constitution of North Carolina.

We further hold that when a vacancy occurs in the office of Lieutenant-Governor, the powers, duties and emoluments of the office of Lieutenant-Governor devolve upon the President of the Senate who shall discharge the duties and powers of the office of Lieutenant-Governor for the unexpired portion of the term to which the Lieutenant-Governor was elected.

In the case of *S. v. Emery*, 224 N.C. 581, 31 S.E. 2d 858, 157 A.L.R. 441, *Stacy, C.J.*, speaking for the Court, said: "The will of the people as expressed in the Constitution is the supreme law of the land. *Warrenton v. Warren County*, 215 N.C. 342, 2 S.E. 2d 463. In searching for this will or intent all cognate provisions are to be brought into view in their entirety and so interpreted as to effectuate the manifest purposes of the instrument. * * *"

When the provisions of our Constitution bearing on the question now before us are properly interpreted, we think they support in letter and spirit the conclusion we have reached.

" * * * Mandamus is an action or proceeding of a civil nature, extra-

ordinary in the sense that it can be maintained only when there is no other adequate remedy and designed to enforce clear legal rights or the performance of ministerial duties which are enjoined by law; but the writ will not be issued to enforce an alleged right which is in doubt. Not only must the plaintiff show that he has a clear legal right; he must show that the opposing party is under legal obligation to perform the act or to grant the relief for the performance or enforcement of which the action is prosecuted. * * *" McIntosh, North Carolina Practice and Procedure, Second Edition, Volume 2, Section 2445.

In our opinion, the petitioner is not entitled to the writ he seeks and we so hold; therefore, the judgment from which this appeal was taken is

Affirmed.

WINBORNE, C.J. not sitting.