Mayer, Appellant, *v.* D'Ortona.

Argued September 25, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and KEIM, JJ..

*Edward R. Becker,* with him *William A. Meehan* and *Stanley M. Greenberg,* for appellant.

*Levy Anderson,* First Deputy City Solicitor, and *David Berger,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE COHEN, October 5, 1962:

In view of the exigency with which we are confronted, we will not here determine the standing of the plaintiff taxpayer and elector to maintain an action in mandamus to compel the holding of a special election to fill a vacancy in the office of councilman where he (the taxpayer and elector) is not a candidate for that office, his only interest being identical with that of all other taxpayers and electors of the district even though grave doubt is cast upon his standing by our decision in *Dorris v. Lloyd (No. 1)*, 375 Pa. 474, 100 A. 2d 924 (1953). Nor by this decision will we determine whether the president of council may be required by an action in mandamus to issue a writ for a special election to be held on a specific date even though there is grave doubt that we can control such an act of discretion. Now we will determine only whether a vacancy was created in the office of a councilman who had been elected president of city council and thereafter took a leave of absence to act as mayor pursuant to the Philadelphia Home Rule Charter requirement that the president of city council should act as mayor until the mayoralty vacancy is filled.

The facts agreed to by both parties are as follows:

At the municipal election held in November, 1959, Richardson Dilworth was elected Mayor of the City of Philadelphia and James H. J. Tate was elected to the office of Councilman from the 7th Councilmanic District for regular terms of four years each. Dilworth and Tate took office on January 3, 1960. On that date Councilman Tate was elected president of council in accordance with the provisions of Section 2-104 of the Philadelphia Home Rule Charter.

On January 14, 1962, Dilworth resigned the office of mayor effective at the close of business February 12, 1962. At a special meeting of Council held on February 13, 1962 Tate presented to Council his request for

a leave of absence from the meetings of Council during the time when he should serve as acting mayor under Section 3-500 of the Philadelphia Home Rule Charter. This leave of absence was granted by Resolution 224 of Council. Thereupon, Councilman Paul D'Ortona, who had been previously elected, took the oath of office as "President pro tempore of the Council" and immediately thereafter Tate was sworn in as "Acting Mayor."

The complaint in substance charged that since Tate was acting as mayor he had vacated the office of councilman of the 7th Councilmanic District and therefore it was the mandatory duty of the appellee to issue a writ of election to fill that vacancy and that the special election for that purpose *must* be held at the next general election on November 6, 1962.

Appellee filed an answer denying that there was any vacancy in the office of Councilman from the 7th Councilmanic District and asserting that Tate, by acting as mayor, had not vacated the office of councilman from the 7th Councilmanic District.

The court en banc concluded that there was no vacancy in the 7th Councilmanic District and entered its order for the appellee. This appeal followed.

The substantive question here presented is clearly controlled and determined by the Philadelphia Home Rule Charter. Section 3-500 of the charter, in view of our decision in *Cali v. Philadelphia*, 406 Pa. 290, 177 A. 2d 824 (1962) must be read as follows:

"Section 3-500. Mayor. An election to fill a vacancy for an unexpired term in the office of mayor shall be held at the next municipal election occurring more than thirty days after the vacancy occurs, unless the vacancy occurs in the last year of the term, in which event a Mayor shall be chosen by the council by a majority vote of all its members. Until the vacancy is filled, or in case of the mayor's temporary disability,

the President of the Council shall act as mayor; and if the President of the Council should resign or be unable to act, then the Chairman of the Finance Committee of the Council shall act as mayor."

Section 3-500 plainly reveals that the president of council shall act as mayor until the vacancy in the office of mayor has been filled. Thus, it follows that the president of council only acts as mayor and continues to act as such by virtue of his office as president of Council. By operation of law, he is required to perform the duties and assume the responsibilities of the office of mayor, but he does not fill the vacancy in that office. Hence, he does not vacate either his office of president of council or as councilman. Indeed, should he cease to be a councilman, or president of Council, he would no longer be authorized to act as mayor. This conclusion is clearly required by the last part of Section 3-500 providing that "if the President of the Council should resign or be unable to act, then the Chairman of the Finance Committee of the Council shall act as Mayor."

Councilman Tate asked for and received a leave of absence from his office of president of council. Neither he nor council deemed the office of president of council or his seat in council thereby to be vacated since, in anticipation of Tate being required to absent himself from Council while acting as mayor, Council elected a president pro tempore in accordance with Section 2-104.

Councilman Tate took an oath of office as "Acting Mayor." D'Ortona took an oath as "President pro tempore." All of the foregoing were consistent with the Philadelphia Home Rule Charter provision under which Tate continues to hold his office as councilman and as president of council.

In every situation the underlying statutes, constitutional articles or charter provisions determine the question. However, the general rule consistently followed

in other jurisdictions is that where an inferior officer acts in a superior office pending the filling of a vacancy in the superior office, the filling of the superior office by the inferior officer does not require him to vacate his inferior office. *State ex rel. Gragg v. Barrett*, 352 Mo. 1076, 180 S.W. 2d 730 (1944); *State ex rel. De Concini v. Garvey*, 67 Ariz. 304, 195 P. 2d 153 (1948); *State ex rel. Lamey v. Mitchell*, 97 Mont. 252, 34 P. 2d 369 (1934); *Clifford v. Heller*, 63 N. J. L. 105, 42 Atl. 155 (1899); *State ex rel. Hardin v. Sadler*, 23 Nev. 356, 47 P. 450 (1897); *State ex rel. Marr v. Stearns*, 72 Minn. 200, 75 N.W. 210 (1898); *State ex rel. Murphy v. McBride*, 29 Wash. 335, 70 P. 25 (1902); *State ex rel. Chatterton v. Grant*, 12 Wyo. 1, 73 P. 470 (1903); *State ex rel. Martin v. Ekern*, 228 Wisc. 645, 280 N.W. 393 (1938); *State ex rel. Ayres v. Gray* (Fla. 1953), 69 So. 2d 187; and *Thomas v. State Board of Elections*, 256 N. C. 401, 124 S.E. 2d 164 (1962).

Here it is not necessary to look to precedent because the Philadelphia Home Rule Charter expressly provides that the president of council shall act as mayor in the event of a vacancy or in case of the mayor's temporary disability. In other words, he shall be the acting mayor—not the mayor.

There is no doubt that our holding in *Cali v. Philadelphia*, supra, which eliminated from the charter the provision that a vacancy could be filled at the next general election precipitated this problem since *Cali* now only permits the election of a mayor to a vacancy at a municipal election. However, even though *Cali* did precipitate the problem, it does not require us to go outside the charter for its solution; nor does it permit us to write new provisions into the city charter which would create vacancies in the office of city councilman where such vacancies were not created by the charter before our decision in *Cali*.

At argument it was suggested that Tate is called mayor, conducts himself as mayor, is paid as a mayor and in all of his activities so simulates a mayor that in reality he is the mayor and hence his office of councilman and president of council is vacated. Standing alone this might be a very convincing argument as to the status of Tate. However, Tate's status is not determined by any test other than that set out in the city charter which clearly defines his status to be that of acting mayor. Thus, no vacancy is created in his councilmanic office either by Tate's assumption of the charter imposed duties of acting mayor or by a resignation and hence the lower court properly refused the writ.

Judgment affirmed.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

Philadelphia is not a City governed solely by a Mayor—it elects, inter alia, not only a Mayor but also an equally important body—a legislative body known as City Council with 7 councilmen-at-large and 10 special councilmen elected to represent the people in 10 districts, including the 7th Councilmanic District here involved. When Mayor Dilworth resigned and Councilman Tate took his place, this created a real, not an imaginary vacancy in City Council.

Richardson Dilworth was elected Mayor of the City of Philadelphia and James H. J. Tate was elected to the office of Councilman from the 7th Councilmanic District, at the municipal election held in November, 1959, each for a term of four years. When Council met on January 3, 1960, Councilman Tate was duly elected President of City Council. On January 14, 1962, Dilworth resigned as Mayor effective February

524

12, 1962.* The next day, Tate obtained by resolution of City Council, a leave of absence from Council. Thereupon Councilman Paul D'Ortona was selected by his colleagues to take Tate's place and took the oath of office as "President pro tempore of the Council". The same day Tate was sworn in as acting Mayor. Since February 13, 1962, Tate has been either Mayor or Acting Mayor of Philadelphia. During this time Tate has always been called Mayor, is paid the salary and emoluments of Mayor, *and has never acted as Councilman.*

Mayer, a taxpayer and elector of Tate's 7th Councilmanic District, presented a petition in mandamus to compel the holding of a special election to fill Tate's vacancy in the office of Councilman. Mayer's legal standing and right to sue to obtain proper representation is clear from the recent decision of the Supreme Court of the United States in *Baker v. Carr,* 369 U. S. 186. Respondent contends (and the lower Court held) that there was *no vacancy* in the 7th Councilmanic District on the ground that Tate is still a Councilman and can resign from the mayoralty whenever he desires and still return and assume his position as President of City Council. Respondent further contends that Tate as Mayor likewise doubles as Councilman from the 7th Councilmanic District and therefore plaintiff and all the electors of that District are still legally and adequately represented by Mayor Tate. This, I believe, creates a "make-believe" world, and with these conclusions I disagree.

I believe that Tate is Mayor of the City of Philadelphia. I am convinced that *there is a vacancy* in the 7th Councilmanic District and that the electors of that

---

* The next election for Mayor of Philadelphia will take place on November 5, 1963, *Cali v. Philadelphia,* 406 Pa. 290. The provisions of the Election Code with respect to an election necessitated by a vacancy in the office of Mayor and in the office of Councilman are very different.

District are entitled to a real and not an imaginary representative in City Council. I am further convinced that the offices of Mayor and of City Councilmen *under the Charter and the governmental organization of Philadelphia are absolutely incompatible,* and except during temporary illness or temporary absence of a Mayor, *the two positions cannot be filled by one person.*

The majority and I agree that the most important question here involved has to be determined by the Philadelphia Home Rule Charter. We thereafter part company for the two-fold reason that I believe (1) that the language of the Philadelphia Home Rule Charter must receive a reasonable interpretation, since that is by common sense, by the Statutory Construction Act and by decisions of this Court a well-recognized presumption, and (2) that the Charter must be considered as a whole instead of merely Section 3-500. Interpreted in the light of the foregoing principles, a vacancy exists in the 7th Councilmanic District, and an election to fill the vacancy should be held on November 6, 1962.

The enabling Act of April 21, 1949, P. L. 665, 53 P.S. §13101 et seq., authorized the City to adopt its own Charter subject to certain limitations therein specifically prescribed, including, in Section 17, "the power and authority to prescribe the elective city officers, who shall be nominated and elected only in the manner provided by, and in accordance with, the provisions of the Pennsylvania Election Code and its amendments . . ."

The Act of May 23, 1949, P. L. 1656, 25 P.S. §2778.1, amended the Election Code by adding Section 628.1 which provides for elections to fill vacancies in the office of a member of the Council by a special election, without limiting it to the election provided for other city officers, including the Mayor. The Philadelphia Home Rule Charter provides in Section 2-101 with respect to the election of a councilman pertinently as follows:

"The Election of Councilmen. . . . one councilman shall be elected from each councilmanic district and seven from the City at large. Each elector shall have the right to vote for one district councilman and for five councilmen-at-large. . . . Should a vacancy occur in the office of any councilman, the President of the Council *shall issue* a writ of election to the board of elections having jurisdiction over elections in the City for a special election to fill the vacancy for the balance of the unexpired term, which election shall be held on a date specified in the writ, but not less than thirty days after its issuance. The President of Council may fix as the date of the special election, the date of the *next* primary, municipal or general election."

The majority hold that the President of City Council shall be an *acting* Mayor until a *permanent* vacancy in the office of Mayor has been filled by a popular election. The majority derive this conclusion from the following provision of the Charter: "Section 3-500. Mayor. An election to fill a vacancy for an unexpired term in the office of Mayor shall be held at the next municipal or general election* occurring more than thirty days after the vacancy occurs, unless the vacancy occurs in the last year of the term, in which event *a Mayor* [not an "acting" Mayor] shall be chosen** by the Council by a majority vote of all its members. Until the vacancy is filled, or in case of the Mayor's temporary disability, the President of the Council should act as Mayor; and if the President of the Council shall resign or be unable to act, then the Chairman of the Finance Committee of the Council shall act as Mayor."

If Section 3-500 were the only pertinent provision, which it is not, I would hold that it is ambiguous and the intent of the Charter, giving it as we must a reasonable construction, was that if the Mayor resigned or

---

* See *Cali v. Philadelphia*, 406 Pa., supra.
** Not an *acting* Mayor, but *a Mayor*.

died shortly after his election, *the Mayor\* shall be chosen by the City Council\** and such choice was to be Mayor for the unexpired term. By construing the word "act" in Section 3-500 alone and narrowly, the majority hold that Tate becomes only an acting Mayor. But Section 3-500, although susceptible of that as well as the opposite construction, does not stand alone. The people of the City of Philadelphia provided in their Charter and are entitled to certain specified councilmanic representatives which the majority utterly deny them and hold in effect that they can be denied this representation for a period of two years or more.

Respondent further contends, we repeat, that Mayor Tate can resign whenever he desires and return to his position as President of City Council. This contention is so obviously unfair to the people of that Councilmanic District and is, I believe, so far fetched and unrealistic as to be absurd.

A much closer and more perplexing question is raised by the contention of the respondent-appellee, namely that mandamus will not lie to determine the legal issue here presented because the time of election is discretionary. It is well settled law, as stated in *Garratt v. Philadelphia,* 387 Pa. 442, 448, ". . . (1) that mandamus lies where there is a clear legal right in the plaintiff and a corresponding duty in the defendant, and the act requested is not discretionary but only ministerial, and (2) that mandamus will not lie *to control* an official's discretion or judgment where that official is vested with a discretionary power. However, the discretion is reviewable and reversible where it is arbitrarily or fraudulently exercised or where, as here, it is based upon a mistaken view of the law: Maxwell v. Farrell School District Board of Directors, 381 Pa. 561, 112 A. 2d 192, and cases therein cited." This law was quoted or reiterated in *Maxwell v. Farrell School*

---

\* Not an *acting* Mayor, but a Mayor.

*District Board of Directors,* 381 Pa. 561, 112 A. 2d 192; *Zaccagnini v. Vandergrift Borough,* 395 Pa. 285, 150 A. 2d 538; *Travis v. Teter,* 370 Pa. 326, 87 A. 2d 177; *Mellinger v. Kuhn,* 388 Pa. 83, 130 A. 2d 154.

Respondent contends that the President of City Council has *the discretion* to call a special election to fill Tate's vacancy if any exists* at any primary or general or municipal election *which is held within the next two or more years,* or in his sole discretion whenever he may desire. While this question was not raised in the Court below and could not be considered by this Court if it had been raised by appellant, it can be considered if raised by appellee. *Sherwood v. Elgart,* 383 Pa. 110, 115, states: "Appellants contend this question [of unconstitutionality] cannot now be raised because of the general rule laid down in Montgomery C. Bar Assn. v. Rinalducci, 329 Pa. 296, 298, 197 A. 924 and Smith v. Yellow Cab Co., 288 Pa. 85, 135 A. 858: '. . . Matters not raised in, or considered by, the court below cannot be invoked on appeal even though they involve constitutional questions.' That is not applicable because it applies only to appellants. The rule here applicable is that a correct decision will be sustained if it can be sustained for any reason whatsoever; in other words we will not reverse in such a case even though the reason given by the Court below to sustain its decision was erroneous: Derry Council, No. 40 v. State Council, 197 Pa. 413, 420; Com. to use v. Wing, 253 Pa. 226, 230; Corgan v. Geo. F. Lee Coal Co., 218 Pa. 386, 392; Brew v. Hastings, 206 Pa. 155, 162; 2 R. C. L. 189; State H. for C. I. v. Consolidated W. S. Co., 267 Pa. 29, 39."

Section 2-101 of the Philadelphia Home Rule Charter, supra, provides that the President of City Council may call a special election to fill a councilmanic va-

---

* Unless the vacancy occurred in the fourth year.

cancy at "the next primary, municipal or general election." In my judgment this must be (a) reasonably construed and (b) construed together with every other pertinent provision of the Charter. In *Sherwood v. Elgart,* 383 Pa. 110, the Court said, p. 114: "To fail to give effect to all of the provisions of a statute or to give them an unreasonable or absurd construction would violate the fundamental rules of statutory interpretation: Sterling v. Philadelphia, 378 Pa. 538, 541, 106 A. 2d 793; American Brake Shoe Co. v. District Lodge 9 of the International Association of Machinists, 373 Pa. 164, 172, 94 A. 2d 884; Statutory Construction Act of May 28, 1937, P. L. 1019, Art. IV, §§51, 52; 46 PS §§551, 552."

The primary election in May, 1962, having gone by, the next General Election is November 6, 1962, and the next Municipal Election is May 21, 1963. Respondent apparently further contends that because of the word "may", the President of City Council may, we repeat, call a Special election three years later or at any time he desires. A reasonable construction of these words, especially when considered together with the entire Charter, would not give the President of City Council the discretion to postpone this special election for a period of two years, or at his discretion at any time in the third year he desires; a reasonable construction requires that the special election must be held this year. It follows that the President of City Council had the discretion to call an election to fill the vacancy in the May Primary of 1962 or in the November General Election of 1962. Irrespective of whether Tate is Mayor or acting Mayor, the President of City Council, having failed to call for an election to fill the vacancy in the next Primary, i.e., in May, no longer has any discretion but merely a ministerial duty of calling a special election at the *next* regular election, to wit, November 6, 1962; and his act, being merely ministerial, mandamus will lie.

To deprive Philadelphia citizens, electors and taxpayers of the 7th Councilmanic District for two or more years of representation in the City Government is repugnant to our "Republican Form of Government" and to the basic American spirit of fairness, equality and justice for all. The deplorable result reached by the majority can be justified only by the clearest language in our Federal or State Constitutions or in a Legislative act or in the Philadelphia Home Rule Charter. No such language exists, hence I would require an election to fill the councilmanic vacancy.

For these reasons I would reverse the Order of the Court below and direct it to issue a mandamus compelling the President of City Council to issue a writ of election for a special election to be held on November 6, 1962, to fill the Councilmanic vacancy in the 7th Councilmanic District.

Mr. Justice O'BRIEN joins in this dissenting opinion.

